748 So.2d 1123 (1999)
Patricia Deshotel CORMIER, et al.
v.
Mickey L. COMEAUX, et al.
Mickey Louis Comeaux, et al.,
v.
State of Louisiana, Through the DOTD.
No. 98-C-2378.
Supreme Court of Louisiana.
July 7, 1999.
Rehearing Denied September 3, 1999.
*1124 Charles Soileau, Rayne, Counsel for Applicant.
Raleigh Newman, J. Rock Palermo, III, John Ezell Jackson, Lake Charles, Jack Derrick Miller, Crowley, Counsel for Respondent.
Bradley Charles Myers, John Francis Jakuback, Lana Davis Crump, Baton Rouge, Counsel for Louisiana Municipal Association (Amicus Curiae).
*1125 VICTORY, J.[*]
We granted a writ to determine if a highway constructed in 1931 contains unreasonably hazardous defects such that liability should be imposed on the State of Louisiana, through the DOTD (the "DOTD"), for injuries caused to the plaintiffs when their car left the highway and struck the back embankment of a roadside ditch. After reviewing the record and the applicable law, we reverse the ruling of the court of appeal and reinstate the ruling of the trial court, holding that the DOTD is not liable for plaintiffs' injuries.

FACTS AND PROCEDURAL HISTORY
In the early morning hours of December 25, 1991, Patricia Cormier and Patrick Kibodeaux left a bar in Midland, Louisiana, with Mickey Comeaux. Comeaux was driving his Dodge Colt and Kibodeaux was seated in the front bucket passenger seat, with Cormier seated on Kibodeaux's lap, as they proceeded to travel west on U.S. Highway 90 on their way to Jennings, Louisiana.
At approximately 3:30 a.m., one mile east of Mermentau, Louisiana, Comeaux, whose blood alcohol level was .14 % at the time of the accident, drove his vehicle off the road at a sharp angle, across the shoulder and an adjacent roadside ditch, and into the back embankment of the ditch. The car rolled over and came to rest in the ditch facing north, 74 feet from where it left the road, with its rear bumper 20 feet from the paved surface of the highway. Cormier and Comeaux were rendered quadriplegics as a result of the accident.
Highway 90 was built in 1931 in accordance with plans and specifications prepared by the Louisiana Department of Highways. It was originally constructed as a two-lane, hard-surface highway with nine-foot-wide travel lanes and six-foot-wide shoulders. Although the plans called for fore slopes of 3:1 in "typical" sections, the plans also show two box culverts, through which a 6 ½-foot deep ditch ran perpendicular to and under the highway, were placed there when the road was originally built. Comeaux's car left the road 10-12 feet past the box culverts, at a point where the roadside ditch was also 6 ½ feet deep, in order to connect with and drain the under road ditch.[1]
Between 1952 and 1954, the travel lanes of Highway 90 were widened to twelve feet, which had the effect of reducing the width of the shoulders to three feet, and the road was resurfaced. In 1969, asphalt was laid over the concrete travel lanes on Highway 90. On the plans and specifications for the work, the shoulder width and fore slope were described as "varies."
Accordingly, at the scene of the accident, the shoulders were only three feet wide and a ditch was located parallel to the edge of the shoulder. The fore slope of the 6 ½-foot deep ditch was 3.8:1 for the first five feet, 2.4:1 for the next five feet and 1.2:1 for the next two feet. Then the side of the ditch dropped vertically 1.5 feet to the bottom of the ditch. The ditch bottom extended 5.7 feet to the beginning of the back slope, which extended 10.5 feet, with a slope of 0.7:1 for the first 2.5 feet, and 1.8:1 for the remainder. Neither the shoulder width nor the ditch slopes met the American Association of State Highway and Transportation Officials ("AASHTO") standards in effect at the time of the accident.
Cormier sued Comeaux and the DOTD and Comeaux sued the DOTD, with both Cormier and Comeaux alleging that the narrow shoulder and steep fore slope and back slope of the ditch were unreasonably hazardous conditions which contributed to the severity of their injuries. After a *1126 bench trial, the trial judge found that the accident was caused solely by Comeaux and awarded Cormier and her family damages against him.
The trial court made the following relevant factual findings: (1) that the state was not negligent in Comeaux's leaving the traveled portion of the highway; (2) that Cormier was not negligent; (3) that the danger created by the conditions of the ditch contributed to the severity of the injuries received by plaintiffs; (4) that changing the contours of the shoulder and ditch or the addition of guard rails would have in all probability lessened the impact and trauma; and (5) the fore slope and back slope of the ditch involved are dangerous to a vehicle leaving the traveled portion of the highway for any reason. Finally, in denying plaintiffs' motion for new trial, the trial judge added:
Now, here we havehe had been drinking, he was tired.[2] I don't know ifMy surmise was that he fell asleep.[3] And look, when he left that paved portion, he went right He wasn't one of these fellows that gets off this drop and he wants to come back on.[4] I don't care what they say. At the speed he was traveling he never had reaction time at all to prevent going straight down. And, you see, these cases say a reasonably prudent driver.
The trial court concluded that "the state owed no duty to plaintiffs to remedy or rectify the dangerous and hazardous conditions enumerated."
The court of appeal reversed, crediting expert testimony that "the combination of defects basically guaranteed that a vehicle inadvertently leaving the travel lane of U.S. Highway 90, even at a safe speed, would not recover and would ultimately collide with the back slope of the adjacent ditch." Cormier v. Comeaux, 97-645, 97-646 (La.App. 3 Cir. 7/1/98), 714 So.2d 943. The court of appeal found that the continuing reconstruction of Highway 90 over the years decreased the margin of safety to the public by narrowing the shoulders without compensating for the now-closer foreslope of the ditch. Id. The court held that DOTD had a duty to correct the problem, because all that was needed was a proper maintenance program and personnel trained to recognize when a slope needed to be made less severe. Id. We granted the DOTD's writ to consider whether the DOTD is liable in this case. Cormier v. Comeaux, 98-2378 (La.12/11/98), 729 So.2d 584.

DISCUSSION
In Stobart v. State Through Dept. of Transp. and Development, 617 So.2d 880 (La.1993), we explained the standard of review the appellate courts must apply when reviewing the trial court's findings of fact:
A court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." Rosell v. *1127 ESCO, 549 So.2d 840 (La.1989). This court has announced a two-part test for the reversal of a factfinder's determinations:
(1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and
(2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous).

See Mart v. Hill, 505 So.2d 1120 (La. 1987).
This test dictates that a reviewing court must do more than simply review the record for some evidence which supports or controverts the trial court's finding. Id. The reviewing court must review the record in its entirety to determine whether the trial court's finding was clearly wrong or manifestly erroneous. Nevertheless, the issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. See generally, Cosse v. Allen-Bradley Co., 601 So.2d 1349, 1351 (La.1992); Housley v. Cerise, 579 So.2d 973 (La.1991); Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990). Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
In order for the DOTD to be held liable, the plaintiff must prove that (1) the DOTD had custody of the thing which caused plaintiffs' damages, (2) the thing was defective because it had a condition which created an unreasonable risk of harm, (3) the DOTD had actual or constructive notice of the defect and failed to take corrective measures within a reasonable time, and (4) the defect was a cause-in-fact of plaintiffs' injuries. Brown v. Louisiana Indem. Co., 97-1344 (La.3/4/98), 707 So.2d 1240; Lee v. State Through Dept. of Transp. and Development, 97-0350 (La.10/21/97), 701 So.2d 676.
The DOTD has a duty to maintain the public highways in a condition that is reasonably safe for persons exercising ordinary care and reasonable prudence. Brown, supra at 1242(citing La. R.S. 48:21). This duty extends to the shoulders of highways as well. Brown, supra; Myers, supra; Rue v. State, Dept. of Highways, 372 So.2d 1197 (La.1979). The highway department's duty to maintain safe shoulders encompasses the foreseeable risk that for any number of reasons, including simple inadvertence, a motorist might find himself traveling on, or partially on, the shoulder. Id. This duty extends to drivers who are slightly exceeding the speed limit or momentarily inattentive. Ledbetter v. State, Through Louisiana Dept. of Transp. and Development, 502 So.2d 1383 (La.1987). As to the area off the shoulder of the road, but within the right of way, DOTD owes a duty to maintain the land in such a condition that it does not present an unreasonable risk of harm to motorists using the adjacent roadway or to others, such as pedestrians, who are using the area in a reasonably prudent manner. Oster v. Department of Transp. and Development, State of La., 582 So.2d 1285 (La.1991) (where off road motorcyclist hit a drainage ditch within DOTD's right of way, DOTD not liable because DOTD has no duty to maintain every inch of property within its control neatly mowed or face the prospect of tort liability). Whether DOTD breached its duty, that is, whether the roadway at the scene of the accident was in an unreasonably dangerous condition, will depend on the facts and circumstances of the case. Campbell v. Louisiana Dept. of Transp. & Development, 94-1052 (La.1/17/95), 648 So.2d 898, 901-02.
In our view, the prime issue in this case is whether the road was defective *1128 because the back slope created an unreasonable risk of harm. The trial court found that Comeaux probably left the road because he was asleep and that based on his angle of departure and speed, he did not have sufficient reaction time to avoid going into the ditch and hitting the back slope of the ditch. This finding was supported by expert testimony that Comeaux only had one second to react from the time he left the road to the time he hit the back slope and by the lack of any skid or other marks that would indicate that he tried to stop or swerve to avoid hitting the back slope. The trial court properly found that this was not a case where the slope of the ditch prevented Comeaux from reentering the highway because he drove directly into the ditch. The trial court also found that the conditions of the ditch contributed to the severity of the plaintiffs' injuries. This finding is supported by the plaintiffs' expert testimony that the collision with the back slope caused the vehicle to rollover which in turn caused the severe injuries suffered by Comier and Comeaux. Thus, because only the back slope was a substantial factor in causing plaintiffs' injuries, our proper focus is only on the back slope of the ditch.[5]
Although the trial judge found that the ditch conditions were dangerous, then, apparently because he did not find them to be unreasonably dangerous, he found that the state had no duty to rectify these dangerous conditions. Whether a road condition is unreasonably dangerous is a question of fact. Ledoux v. State Through Dept. of Transp. and Development, 98-0024 (La.9/18/98), 719 So.2d 43 (trial court finding that the condition of the road and the presence of a tree stump near the shoulder did not present an unreasonably dangerous condition was a finding of fact). Thus, we will review the trial court's finding that the road conditions were dangerous and hazardous, not unreasonably dangerous, under the manifestly erroneous standard enunciated above.
"The unreasonable risk of harm criterion entails a myriad of considerations and cannot be applied mechanically." Oster, supra at 1288. "Although courts, including this court, have described the unreasonable risk of harm criterion as requiring the court to balance the likelihood and magnitude of harm against the utility of the thing, the balancing test required by the unreasonable risk of harm criterion does not lend itself well to such neat, mathematical formulations." Id. at 1289. "In addition to the likelihood and magnitude of the risk and utility of the thing, the interpreter should consider a broad range of social, economic, and moral factors including the cost to the defendant of avoiding the risk and the social utility of the plaintiffs conduct." Id. "One cannot be protected from all risks." Graves v. Page, 96-2201 (La.11/7/97), 703 So.2d 566, 573. "This *1129 Court must decide which risks are unreasonable." Id.
In Graves, we held that keeping the highway right of way clear of vegetation that creates site obstructions was not within the scope of the duty of the DOTD to maintain the roadway and the shoulders of the highway. There, the plaintiff's vehicle was struck by a drunk driver traveling at an excessive speed around a curve in the highway and the plaintiff claimed he did not see the drunk driver because of the existence of vegetation growing on the inside of the curve. We held that the vegetation did not pose an unreasonable risk of harm nor was it a substantial factor without which this accident would not have happened. In concluding that "[i]t is unreasonable to impose a rule of law that would require DOTD to maintain every tree and shrubbery within its control or face the prospect of tort liability," we reasoned that "[t]he duty to maintain the roadway and shoulder does not encompass the risk that an intoxicated oncoming driver, traveling at a high rate of speed, will cross over into a motorist's lane of travel." Id. at 574.
The plaintiffs argue that the shoulder and slopes of the ditch were unreasonably hazardous because they did not meet current AASHTO standards. However, the DOTD clearly does not have a duty to bring old highways up to modern AASHTO standards. Aucoin v. State Through Dept. of Transp. and Development, 97-1938 (La.4/24/98), 97-1967 (La.4/24/98), 712 So.2d 62; Myers v. State Farm Mut. Auto. Ins. Co., 493 So.2d 1170 (La.1986); Holloway v. State Through Dept. of Transp. and Development, 555 So.2d 1341 (La.1990). We have held that this duty does not exist unless a new construction or a major reconstruction of the highway has taken place. Ledoux, supra. In this case, although the lanes were widened and resurfaced in 1954 and the road was resurfaced in 1969, no major reconstruction was undertaken, as recognized by the court of appeal. Thus, the DOTD had no duty to bring Highway 90 up to current AASHTO standards.
The plaintiffs also argue that liability should be imposed on the DOTD because their maintenance practices actually increased the back slope of the ditch. Although the DOTD's maintenance supervisor testified that generally, in order to clean out ditches, they dug out the ditches, this evidence does not establish that improper maintenance increased the back slope of the ditch at the scene of the accident. There was no evidence presented as to the original back slope of the ditch at this location. Although the original plans called for a 3:1 fore slope in "typical" sections, the point where Comeaux's vehicle crossed the ditch was not a "typical" section in that the topography mandated a deeper ditch because the ditch connected with and drained a 6 ½-foot deep ditch which ran perpendicular to and under the road from the time the road was built. The original plans did not indicate the desired slope of the back slopes. The record reflects that the depth of the ditch at the time of the accident was still 6 ½ feet deep.
Plaintiffs also argue that guardrails should have been installed over the box culverts. Beginning in 1939, AASTO introduced guidelines which required guard rails at certain points. However, as recognized by the court of appeal, Highway 90 did not undergo any major reconstruction and thus the AASHTO standards regarding guard rails do not apply to Highway 90. In addition, while a guard rail may have lessened the severity of the plaintiffs' injuries, the DOTD's duty to provide a reasonably safe highway does not require the DOTD to take every conceivable measure to prevent injuries. In this case, the surface of the road and shoulder were in good condition, and the roadside ditch was clearly visible to a reasonably prudent driver.
Generally, in other cases such as this one, where no road defect caused the driver to leave the road and the driver hit an *1130 object in the DOTD's right of way, the DOTD has been relieved of liability.[6] Two cases involved the same highway, the Greenwell Springs Road. Just as in the case at bar, the highway was built in the 1930s and the lanes were subsequently widened, leaving a one-to-two-foot shoulder and an adjacent ditch. In Myers, supra, the driver swerved off the road to avoid a car and ran into a tree in the ditch that had a fore slope of 2:1. In Holloway, supra, the driver left the pavement for unknown reasons and ran into a tree just beyond the back slope of the ditch, 13 feet from the road. In both cases, this Court held that the DOTD had no duty to bring the road up to current standards. In Myers, the Court held that, as in this case, where the travel lanes had been widened which reduced the width of the shoulders, "overall the highway was improved and made more safe for persons traveling on it because the lanes of travel were widened and the surface of the road improved, but the crown of the highway was not brought any closer to roadside objects." 493 So.2d at 1173. In Holloway, the Court held that the road was not unreasonably dangerous in that there were no defects in the roadway or shoulder, and the roadway was unobstructed with a clearly visible shoulder sloping into a ditch.[7]
The plaintiffs argue that this Court's recent decision in Aucoin, supra, requires a finding of liability against the DOTD. In Aucoin, the driver swerved off the road to avoid hitting a dog. When she swerved, her car's outer wheels ran outside the white fog line, onto a narrow shoulder approximately one foot wide, and down a steeply sloped ditch. In less than two *1131 seconds from the time her wheels first left the road, her car had traveled 123 feet before crashing into a tree that was growing on the back slope of the ditch in DOTD's right of way, 8 ½ feet from the edge of the fog line. The highway in Aucoin was the same highway, Greenwell Springs Road, involved in the Myers and Holloway cases. The Aucoin court expressly reaffirmed Myers and Holloway, but distinguished those cases, noting that by 1990, the "DOTD could not name a more dangerous road given the combination of dangerous conditions." Id. Justices Marcus and Traylor dissented, asserting that reaffirming the holding in Myers required a conclusion that the DOTD was not liable for its failure to bring the road up to current standards.
The circumstances in this case are easily distinguishable from those in Aucoin: namely, in this case there was no drop-off shoulder; the shoulder width was three feet, not one foot; the drunk driver ran off the road perhaps because he was asleep and he never tried to get back on the road, making the fore slope irrelevant; there were no DOTD standards applicable to Highway 90 that the DOTD was compelled to meet, such as the 3:1 sloping in Aucoin; and, the distance from the edge of the shoulder to the back slope was 17 feet, compared with the 8 ½-foot horizontal clearance in Aucoin.
As we stated in Graves, one cannot be protected from all risks. Undoubtedly, it would be desirable for the DOTD to design roads so that no accidents would ever occur, however, economic realities make such a goal impossible to reach. Thus, we as a society must determine the lengths we expect the DOTD to go to ensure that our roads are safe. We have expressed this as standard as "reasonably safe for persons exercising ordinary care and reasonable prudence." Brown, supra. As we stated in Myers, "many Louisiana roads have narrow shoulders and steep roadside ditches and are lined with trees, culverts, fences, and other objects." 493 So.2d at 1173. "[I]t would be physically and financially impossible to bring all of the state's roads up to modern standards." Id. Although we as a society demand that old highways be reasonably safe, the DOTD's duty to maintain old highways does not include the risk that an intoxicated driver will fall asleep and drive off the road at a sharp angle, failing to see a clearly visible roadside obstacle 17 feet from the shoulder, in this case, the back slope of the ditch.

CONCLUSION
The State has no duty to bring old highways up to current safety standards, unless the highway has undergone major reconstruction. Nevertheless, the State has a duty to correct conditions existing on old highways that are unreasonably dangerous. In this case, the DOTD breached no duty owed to plaintiffs given the following factors: (1) the driver was drunk and possibly asleep when he ran off the road; (2) the driver ran off the road at a sharp angle for no apparent reason with no time to react and reenter the highway; (3) Highway 90 was an old highway which has not undergone a major reconstruction since it was built in the 1930s; (4) the roadway itself had no defects; (5) the ditch was 6.5 feet deep when the highway was built and was 6.5 feet deep at the time of the accident; (6) the narrow shoulder and roadside ditch were clearly visible; and (7) there was no evidence that the angle of the back slope was increased from the time of its original design. Thus, we affirm the trial court's finding that the DOTD is not liable in this case. The court of appeal erred in reversing the trial court's finding that the DOTD owed no duty to plaintiffs to improve the condition of the roadside shoulder and ditch.

DECREE
For the reasons stated herein, we reverse the holding of the court of appeal and reinstate the ruling of the trial court finding that the DOTD is not liable to plaintiffs in this case.
REVERSED.
*1132 LEMMON, J., concurs and assigns reasons.
JOHNSON and KNOLL, JJ., dissent and assign reasons.

ATTACHMENT

*1133 LEMMON, J., Concurring
The purpose of regulating fore slopes of roadside ditches is to improve the chances of recovery by a motorist who leaves the highway for any reason and attempts to steer back onto the road or otherwise maintain control of the vehicle off the road. Although the driver in the present case may have left the highway at a sharp angle, he traveled seventy-four feet before striking the back slope, and the fore slope of the ditch could be relevant to his ability to control the vehicle during this brief time interval. I therefore would not limit our focus to the back slope of the ditch, especially since the trial judge found both the fore slope and back slope were dangerous.
The overall slope of the ditch at the relevant location is shown on the attached exhibit from the record. After the three-foot shoulder (which is seventeen feet from the beginning of the back slope), the slope of the first five-foot section of the ditch is almost 4:1, while the slope of the second five-foot section is 2.4:1. Because there was no extremely abrupt plunge in the first ten feet of the fore slope, there was no manifest error in the trial judge's conclusion that the fore slope, while below (arguably inapplicable) standards, was not unreasonably dangerous.[1]
This case may be distinguished from Aucoin v. State of Louisiana Through Dep't of Transp. and Dev., 97-1938 (La.4/24/98), 97-1967 (La.4/24/98); 712 So.2d 62. The most significant distinction is that the 1988 overlay project in the Aucoin case required grading of the drainage ditch, next to a one-foot shoulder, to achieve a slope of at least 3:1, and the fore slope of the ditch at the point of impact was more than twice as steep. The DOTD's construction and maintenance failure regarding the ditch, combined with the extremely narrow shoulder, made the roadside unreasonably dangerous in terms of recoverability, as found by the trial judge in that case.

*1134 ATTACHMENT

JOHNSON, Justice, dissenting
In the case sub judice, this court has held that DOTD is not liable for Plaintiff's injuries. The majority reasons that DOTD owed no duty to Plaintiffs because the driver was intoxicated and possibly asleep when the car ran off the road. *1135 However, the fact that the driver fell asleep does not relieve DOTD of its duty to keep the highways in a reasonably safe condition nor should it prevent Plaintiffs from recovering damages from DOTD for the injures they sustained. The fact that more than one party can contribute to a person's injuries is the reason for Louisiana's comparative fault system[1]. Campbell v. Louisiana Dep't of Transp. & Dev., 94-1052 (La.1/17/95), 648 So.2d 898, 902. In Campbell, the plaintiffs were traveling west along Louisiana Highway 6 between the hours of 4:30am and 5:00am when the driver fell asleep. The vehicle moved out of the travel lane and onto the right shoulder. The driver awakened and turned the steering wheel to the left to try to get back onto the highway. In doing so, the driver lost control of the vehicle and struck the concrete abutment of a bridge. The plaintiffs brought suit against DOTD for the injuries they sustained. DOTD argued that their failure to maintain the highway in a reasonably safe condition was not the cause-in-fact of the plaintiffs' injuries because the driver fell asleep and lost control of the vehicle. This court rejected DOTD's argument stating, "[T]he failure of [the driver] to maintain control of the vehicle does not relieve DOTD of its duty to keep the highways safe." Campbell, 648 So.2d at 902. This court held DOTD seventy-five percent (75%) at fault in causing the plaintiffs' injuries.
The facts in Campbell are very similar to the instant case. In the instant case, the majority incorrectly relies on the fact that Comeaux was intoxicated and asleep in holding that DOTD did not breach its duty to Plaintiffs. This court should have allocated a percentage of fault to both DOTD and Comeaux rather than finding DOTD without fault.
DOTD was negligent in failing to maintain that portion of Highway 90 where the accident occurred in a reasonably safe condition. At the scene of the accident, the shoulder was too narrow, the foreslope of the ditch was too steep, the back slope of the ditch was too severe, and there was no clear recovery zone provided. In 1968, the Louisiana Department of Highways recommended ten foot wide shoulders, a 6:1 fore slope, and a 4:1 back slope along Highway 90. In April 1969, additional construction took place along Highway 90 at which time DOTD could have brought Highway 90 in compliance with the State Department of Highways' recommendation. Nevertheless, Highway 90 had three foot wide shoulders, a 3.8:1 fore slope, and a 1.8:1 back slope at the scene of the accident.
Admittedly, DOTD has no duty to bring all highways in compliance with modern safety construction standards. However, whether or not the DOTD has conformed to those standards is a relevant factor in determining whether or not a roadway is unreasonably dangerous. Dill v. Department of Transp. & Dev., 545 So.2d 994, 996. In this case, the narrow shoulder, steep foreslope, and severe back slope created a dangerous condition whereby any vehicle leaving the roadway would be unable to make a safe recovery back onto the roadway. DOTD's duty to keep the highways in a reasonably safe condition encompasses the foreseeable risk that, for any number of reasons, including simple inadvertence, a motorist might find himself traveling on, or partially on the shoulder. Begnaud v. Department of Transp. & Dev., 93-639 (La.App. 5 Cir. 1/12/94), 631 So.2d 467, 470. DOTD also has a duty to *1136 keep the area off the highway shoulder in such a condition that it does not pose an unreasonable risk of harm to motorists using the travel lanes or shoulder. Oster v. Department of Transp. & Dev., 582 So.2d 1285, 1286 (La.1991). The DOTD breached its duty to keep the shoulder and the area adjacent to the shoulder in a reasonably safe condition. As Plaintiffs' experts explained:
If the shoulder meets the minimum safety standards, the driver who exits the travel lane ... has the benefit of the eight-foot wide shoulder on which to recover. Even when, as in this case, the shoulder does not meet minimum safety standards, a properly designed foreslope will give the driver additional protection. If the fore slope is 4:1 or flatter, the driver has a margin of safety in which to regain control of his (or her) vehicle.... A foreslope that does not meet minimum safety standards is made even more dangerous by a back slope which does not meet minimum safety standards. Even if the shoulder and the foreslope do not meet minimum standards and a vehicle is pulled into the ditch, if the back slope is properly designed, the vehicle may be able to exit on the far side of the ditch under control. However, a vehicle trapped into a downward spiral by a too-severe foreslope is destined to collide with an improperly-designed and too-steep back slope.
Cormier v. Comeaux, 97-645 (La.App. 3 Cir. 7/1/98), 714 So.2d 943, 949.
The combination of defects along Highway 90 basically guaranteed that any vehicle leaving the travel lane, for any reason, would ultimately collide with the back slope of the adjacent ditch. Therefore, I would hold DOTD liable because their negligence contributed to the severity of Plaintiffs' injuries. This court should review the correctness of the apportionment of fault and consider the adequacy of the damages awarded.
KNOLL, Justice, dissenting.
The majority holds that the "DOTD's duty to maintain old highways does not include the risk that an intoxicated driver will fall asleep and drive off the road at a sharp angle, failing to see a clearly visible roadside obstacle 17 feet from the shoulder, in this case, the back slope of the ditch." The majority also finds that the only issue in this case is whether the back slope of the ditch created an unreasonable risk of harm. I disagree with this conclusion as the evidence in the record does not support such a proposition. Further, I disagree that the back slope is the only issue in this case as in all cases of unrecoverable slopes, it is an improperly sloped foreslope that causes a driver to be unable to recover by pulling the driver into an improperly sloped back slope and ultimately causing the accident. The majority ignores the overwhelming evidence establishing that the DOTD created and allowed to accumulate a combination of dangerous conditions that rendered this off roadway area an unreasonable risk of harm to the motoring public leaving the traveled portion of the highway for any reason. Aucoin v. State Through Dep't of Transp. & Dev., 97-1938, 97-1967 (La.4/24/98), 712 So.2d 62.
For unknown reasons, the vehicle exited Highway 90 at a slight deviation (less than a seventeen-degree angle), traversed the highway's shoulder, entered the ditch, and was trapped. Clearly, a combination of factors, all within, the control of and caused by DOTD, created an unreasonable risk of harm in the area of the accident. The shoulder was not wide enough; the foreslope was too steep and nonrecoverable; the ditch was unsafe; and that the back slope was too severe. The record established that while the foreslope was originally designed at 3:1, the State through its maintenance programs increased the severity of the foreslope and back slope to unreasonably dangerous ratios. At the time of the accident, the highway, after two construction projects,[1] *1137 had eleven-and-one-half-foot-wide travel lanes and three-foot-wide unpaved shoulders. The trial court accepted the measurements of plaintiffs' expert regarding the slopes. The ditch foreslope began immediately adjacent to the shoulder, and the combination of foreslope, ditch bottom, and back slope resulted in a 28.2-foot-wide ditch. The foreslope comprised twelve feet of the 28.2 feet to a straight vertical drop for a foot and a half in the bottom of the ditch and contained three different slope breaks over the twelve-foot distance: (1) the first five-foot section at 3.8:1; (2) the next five-foot section at 2.4:1; and (3) the last two-foot section at 1.2:1. While the very purpose of a foreslope is intended to "allow one to have a smooth ride and not flip over," the foreslope in the case sub judice worked as a trap due to its deviating ratios. Clearly, the foreslope created a nonrecoverable hazard as once a vehicle traversed the slope, the steep decline and the force of gravity naturally pulled it down and prevented the vehicle from returning to the roadway or recovering.
The back slope at the accident site likewise presented an unreasonable risk of harm due to its severe slope. At impact, the ditch was 5.7 feet in width and 6.5 feet in depth. The measurements of the back slope accepted by the trial court revealed that in the first two and a half feet the slope was 0.7:1 and the next eight feet was 1.8:1. Thus, while the purpose of a back slope is to allow a motorist to safely traverse through the accident and exit on the far side of the ditch under control, the severity of the back slope in this case prevented the vehicle from safely traversing the ditch and instead, coupled with the severe and multiple slopes of the foreslope and the ditch's depth, width, and vertical drop off, worked as a horizontal obstacle creating an unreasonable risk of harm and increasing the severity of plaintiffs' injuries.
Although the State has no duty to bring roads and highways up to current safety standards, Myers v. State Farm Mut. Auto. Ins. Co., 493 So.2d 1170, 1173 (La. 1986), it cannot increase the risk to the motoring public by decreasing the margin of safety to the motoring public by: (1) narrowing the shoulders and thereby bringing the motoring public closer to an unreasonably dangerous area; and (2) maintaining and failing to maintain the shoulder, foreslope, and back slope of a ditch such that the slopes substantially deviate from original design specifications. DOTD cannot create a nonrecoverable trap to the motoring public who for whatever reason leave the roadway and thereby create an unreasonable risk of harm, and then ask the courts to absolve it of liability without also compensating for the now-closer unreasonable conditions.
The likelihood and magnitude of harm to motorists inadvertently traveling out of their lane of travel, off a three-foot shoulder, and into the ditch is great, as shown by the severe injuries sustained in this accident. Conversely, the utility of a ditch with a foreslope and back slope substantially deviating from original design specifications is slight. Further, this unreasonably dangerous situation could have been remedied simply by increasing the *1138 shoulder width and/or modifying the foreslope and/or back slope of the ditch to less severe ratios or by installing a guardrail. DOTD's duty to maintain our highways encompasses the foreseeable risk that for any number of reasons, including inadvertence as in this case, a vehicle might travel on the shoulder. In para materia with this duty, DOTD must design and maintain highways and the area off the shoulder of the road, but within the right of way, with this contingency in mind in such a manner to give the motorist the opportunity to recover safely. Graves v. Page, 96-2201 (La. 11/7/97), 703 So.2d 566, 572. In this case, a properly maintained foreslope and back slope as originally designed would have given the driver additional protection to regain control of his vehicle. However, just as the court of appeal correctly concluded, the "combination of defects basically guaranteed that a vehicle inadvertently leaving the travel lane of U.S. Highway 90, even at a safe speed, would not recover and would ultimately collide with the back slope of the adjacent ditch." Cormier v. Comeaux, 97-645 (La.App. 3 Cir. 7/1/98), 714 So.2d 943, 949.
The majority correctly recognizes that this area along the travel portion of the roadway presented a dangerous and hazardous condition. The trial judge made this finding as well. In my view, a dangerous trap from the combination of serious defects caused by DOTD through the years, presented an unreasonable danger to the motoring public and substantially contributed to the cause of this tragic accident.
The majority emphasizes Comeaux's blood alcohol level while driving as though his drinking was the sole cause of this accident. I recognize Comeaux's negligence contributed to the cause of this accident, but had he inadvertently driven off the roadway totally sober, he still could not have recovered from this dangerous trap made by DOTD. The failure of Comeaux to "maintain control of the vehicle does not relieve DOTD of its duty to keep the highways safe." Campbell v. Louisiana Dept. Of Transp. & Dev., 94-1052 (La.1/17/95), 648 So.2d 898, 902. The issue is really apportionment of fault. The majority fails to take this aspect into consideration, which the court of appeal did, and instead the majority casts Comeaux totally at fault. This accident involved "one unfortunate event"a vehicle inadvertently leaving its lane of travel and into a nonrecoverable slope that had no clear recovery zone and was a substantial cause of the harm. Id. "The fact that more than one party can contribute to the harm is the reason for our comparative fault system." Id. Given the unreasonably dangerous conditions of this area off Highway 90 caused by DOTD, I would find it substantially at fault. The record clearly supports that DOTD was comparatively at fault as found by the court of appeal.
For these reasons, and those assigned by the court of appeal, I respectfully dissent.

ON REHEARING
CALOGERO, Chief Justice, concurring.
I concur in denial of the rehearing because I agree that the trial court did not commit manifest error in concluding that the road was not unreasonably dangerous. However, I write separately to express my disagreement with portions of the original opinion which imply that the driver's fault was a factor in determining that DOTD owed no duty to the plaintiffs in this case. I agree with the dissenters on original hearing that it is ill-advised for us to consider the motorist's fault when assessing DOTD's duty to reasonably maintain old highways. The majority's inference to this effect is particularly egregious in a case like this involving a guest passenger. A duty either exists or it does not, and the motorist's fault is not a factor in making this determination. Rather, our comparative fault system addresses the parties' fault by appropriately apportioning liability among tortfeasors and/or reducing plaintiffs recovery. See Campbell v. Louisiana *1139 Dep't. of Transp. & Dev., 94-1052 (La.1/17/95), 648 So.2d 898.
NOTES
[*] Marcus, J., not on panel. Rule IV, Part 2, § 3.
[1] Attached to this opinion is a copy of plaintiffs' exhibit P 5-A, which is a picture of the area where Comeaux's vehicle left the shoulder and ran into the back embankment of the ditch.
[2] Although trial court found that Comeaux had been drinking and probably fell asleep at the wheel, the court of appeal noted that Comeaux had a blood alcohol level of .14%, but then credited "eyewitness testimony [that] was to the effect that his driving was not impaired." 714 So.2d at 945. Apparently, the court of appeal was relying on the testimony of Cormier, who testified that she watched Comeaux drive for a couple of miles before she fell asleep in the front seat to make sure he was driving safely.
[3] Comeaux and Kibodeaux have no recollection of the accident. Cormier testified that although she was asleep prior to the accident, she felt a jolt and awoke to see Comeaux "fighting with the steering wheel." Expert testimony established that Comeaux had one second to react from the time he left the road to the time he hit the back slope of the ditch. There were no skid marks or marks of any kind that would indicate that Comeaux tried to stop or steer away from the ditch.
[4] In spite of expert testimony which supported the trial court's finding that the Comeaux vehicle left the road at a sharp angle leaving insufficient time for Comeaux to react, the court of appeal found that, based on its own calculations "using appropriate trigometric function, the angle at which the vehicle left the highway was less than seventeen degrees." 714 So.2d at 948.
[5] As to the causation issue, we recognize that although no defect caused Comeaux to leave the road, the trial court did found that the condition of the ditch contributed to the severity of plaintiffs' injuries. This Court has held that "the failure of [the driver] to maintain control of the vehicle does not relieve DOTD of its duty to keep the highways safe." Campbell, supra. In Campbell, the driver fell asleep and ran off the shoulder of the road at which time the driver awoke, and turned the car to the left to try and get back on the highway before he entered a bridge. The right front tire caught the shoulder causing the car to swerve and he hit the concrete abutment of the bridge, which did not have guardrails. The trial court placed 75% fault with the DOTD and the court of appeal reduced it to 10%. Expert testimony showed that the severity of the accident would have been lessened by 80% had the car hit a guardrail. In addition, of the 15 bridges on that highway, all had been given guardrails during overlay work except the bridge where the accident occurred, despite the fact that the bridge met DOTD criteria for the placement of guardrails during overlay projects. The Court rejected the DOTD's argument that the lack of guardrails did not cause the driver to lose control of his vehicle, holding that "[the driver's] negligence set the course for an accident to happen, but the harm or injuries to the guest passengers in [the driver's] vehicle were a direct result of the impact with the concrete bridge abutment." Id. at 903.
[6] Contrary to the facts of this case, in most cases where the DOTD has been found liable for highway defects, liability has been based on a finding that the highway defect itself caused the driver to leave the roadway and have an accident. Brown, supra (excessive shoulder slope and excessive rollover on curve was 25% cause of accident, despite fact that driver fell asleep and failed to negotiate the curve; DOTD not liable however for abandoned driveway on shoulder which driver collided with and which caused his car to become airborne); Sinitiere v. Lavergne, 391 So.2d 821 (La.1980) (although the DOTD is not the guarantor of the safety of all motorists, DOTD 50% liable because 3-4 inch drop off from road to shoulder caused driver to lose control); Ledbetter, supra (lack of warning signs on curve was cause-in-fact of driver running off road); Molbert v. Toepfer, 550 So.2d 183 (La.1989) (design of curve and lack of warning and appropriate speed limit resulted in 5% liability of DOTD, despite fact that driver had .13% blood alcohol level); Dill v. State, Dept. of Transp. and Development, 545 So.2d 994 (La.1989) (curve, which was the site of 72 prior accidents, presented unreasonable risk of harm because narrow lane width and severe degree of curvature were long-standing design conditions compounded by construction and maintenance defects); Stobart v. State Through Dept. Of Transp. and Development, supra (bumps and potholes caused driver to leave roadway); Hunter v. Department of Transp. and Development of State of La., 620 So.2d 1149 (La.1993) (narrow median for left hand turns was joint cause of accident, DOTD had duty to bring up to AASHTO standards because highway underwent a major reconstruction).
[7] In the following cases, the DOTD was also relieved of liability. In Manasco v. Poplus, 530 So.2d 548 (La.1988), the driver veered onto the shoulder of an old highway to avoid a car making a left-hand turn and his front bumper hit a fire hydrant in the ditch next to the shoulder. The court held that failure to reconstruct the highway to meet modern standards did not establish the existence of a defect. The court also found that the surface of the roadway was in good condition, free from ruts and potholes and there was no abrupt drop-off between the travel lane and the gravel shoulder.

In Ledoux, supra, the driver, who had a.14% blood alcohol level, lost control as he approached a turn on an old highway and struck a tree stump seven feet from the edge of the paved roadway and continued across a field where it flipped several times, striking a telephone pole as well as a steel barricade surrounding a gas main. The plaintiff claimed that when the DOTD widened the travel portion of the road, it reduced the clear zone from 19 to 7 feet. Expert testimony was inconsistent as to whether the tree stump caused the car to roll over and the trial court credited the testimony of the DOTD expert who opined that given the driver's speed and trajectory, the car would have rolled over even without hitting the stump. The Third Circuit reversed and this Court reinstated the trial court's ruling.
[1] I disagree with the majority characterization of the determination of whether a road condition is unreasonably dangerous as a question of fact. Generally such a determination is a mixed question of law and fact.
[1] The Civil Code article establishing comparative fault in Louisiana states: "In any action for damages where a person suffers injury, death, or loss, the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined, regardless of whether the person is a party to the action or a nonparty, and regardless of the person's insolvency, ability to pay, immunity by statute, including but not limited to the provisions of R.S. 23:1032, or that the other person's identity is not known or reasonably ascertainable. If a person suffers injury, death, or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death, or loss." La. Civ. Code Ann. art. 2323(A) (West 1997).
[1] The first construction, in 1952, widened the travel lanes to twelve feet and overlaid the highway, without increasing the crown. Thus, the effect of the construction substantially reduced the shoulder from six feet to three feet. The project did not, however, alter the foreslope of the ditch, despite the fact that the existing standards called for a 4:1 to 6:1 foreslope and 3:1 back slope. The second construction took place in April 1969. While this construction maintained the acceptable twelve-foot travel lanes, it likewise made no effort to meet existing standards and maintained the three-foot shoulders and a foreslope and back slope of the ditch both of which still did not meet accepted construction standards. The minimum recommended shoulder width of eight-feet was significantly less at three feet, the minimum recommended foreslope of 6:1 was almost half that at 3.8:1; and the minimum recommended back slope of 4:1 substantially deviated at 1.8:1, at its best. Thus, by the time the Louisiana Department of Highways completed its construction projects, it effectively caused the motoring public to be subjected to a three-foot safety zone between the travel lane of the highway and a ditch which failed to come close to complying with current safety standards and created nonrecoverable trap.