|-, EDWIN A. LOMBARD, Judge.
This case involves a single vehicle accident in which the driver, Joseph Rizzuto, and his passenger, Neal Sartalamacchia, were injured. Rizzuto and Sartalamacchia filed suit on May 5, 1999, against only one defendant, the State of Louisiana, through the Department of Transportation and Development (“DOTD”), alleging that the accident was caused by the unreasonably dangerous roadway and shoulder of East Louisiana Highway 46.[1]
Sartalamacchia stipulated that his damages did not exceed $50,000.00, exclusive of interests and costs and, accordingly, his case was tried concurrently to the court with the jury trial of Rizzuto’s claims. After a three-day trial, both the judge and jury rendered a verdict in favor of the plaintiffs and against the DOTD. However, whereas the jury apportioned fault at 40% to DOTD, 3% to Rizzuto, and 57% to “any other source,”[2] the trial judge found the DOTD to be 100% at fault for the accident.
On appeal, the DOTD challenges only the finding of liability and does not contest the amount of damages. Specifically, the DOTD contends that the triers of Rfact erred (1) in concluding that (a) the highway was unreasonably dangerous; (b) the shoulder of the highway was the cause of the accident; and (c) the accident occurred anywhere other than 9/10 of a mile from the intersection of Florrisant Highway and La. 625; and (2) in apportioning fault to the DOTD. After reviewing the record evidence in light of the applicable law and the arguments of the parties, we affirm the judgment in favor of plaintiff Rizzuto. We vacate and amend the judgment in favor of plaintiff Sartalamacchia with regard to the *1037 apportionment of fault and, as amended, affirm the judgment.

Pertinent Facts

The following pertinent evidence was adduced at trial. At approximately 11 p.m. on May 11, 1998, the plaintiffs were returning home after a day of fishing in Delacroix on East Louisiana Highway 46, also known as Florrisant Highway, in St. Bernard Parish. Rizzuto, driving a tow truck[3] owned by his employer, swerved off the paved surface of Highway 46 and into the adjacent bayou at some point between log mile 2.9 and 3.2 of Highway 46[4], purportedly to avoid an oncoming vehicle which swerved into his travel lane. The truck, which had been traveling at a speed between 45 and 55 miles per hour[5], stopped abruptly when it hit the water in the bayou, causing Rizzuto to hit the steering wheel with his chest and go over the steering wheel and his passenger’s head to hit the windshield.[6]
|3The officer responding to the accident, Sergeant David Estaves of the St. Bernard’s Sheriffs Office, noted the odometer distance from the intersection of Louisiana Highway 625 to the accident site as .9 miles. Sgt. Estaves also noted a 25-foot skid mark in the soft soil on the side of the road leading from the roadway into the bayou. He found no other vehicles at the accident site and issued no citations. At trial, Sgt. Estaves identified the plaintiffs’ photographic exhibits of the accident site.
The roadway now designated as Louisiana Highway 46 has been in existence since at least 1917 and is located on a floodplain with wetlands to the south of the roadway and Bayou LaLoutre, a once navigable natural body of water, bordering a portion of the north side of the roadway. The roadway was incorporated into the state highway system in the nineteen-thirties prior to the adoption in 1943 of design standards for new construction[7] and reconstruction of state highway facilities. The standards were not retroactively applicable and, accordingly, there is no requirement for the DOTD to bring existing roadways into compliance.[8]
Over the years, the DOTD has implemented a number of projects to maintain the roadway. In 1944, the DOTD raised the elevation of the highway by adding clamshells to the roadbed[9] to restore it as *1038 a public travel way because the roadway was subject to water tides on both its bayou side and its southern side. The roadway continued to erode, however, requiring further maintenance projects. [4In the early nineteen-fifties, the DOTD graded the existing ditch on the south side of the roadway, added more shell to increase the elevation of the roadway another seven inches, and put a bituminous surface treatment[10] on the roadway. In the early nineteen-seventies, the DOTD raised the elevation of the roadway 3 % inches with clamshells, put an asphalted concrete overlay on the existing travel lanes[11] of the roadway, and raised the existing shoulders of the roadway to match the elevations at the edge of the travel lane. Because the average daily traffic on the roadway reached 1540 vehicles per day in the early nineteen-eighties, the DOTD widened the roadway base by two feet and three inches to accommodate an eleven-foot wide overlay in each travel lane within the existing overall crown[12] width of the roadway and raised the shoulder to the elevation of the new roadway. After completion of this maintenance project, the shoulder width of the roadway averaged two and a half feet and the slope of the shoulder on the roadway was between 8 and 10 degrees[13].
In support of their claim that the roadway was unreasonably dangerous and the cause of the accident, the plaintiffs presented testimony by two expert witnesses, Dr. Frank Griffith, an expert in physics in accident reconstruction, and Robert Can-field, an expert in traffic and transportation. Dr. Griffith testified that the shoulders and foreslope of the bank of the bayou were too steep to recover when, as in this case, a driver drove off the highway to avoid an oncoming vehicle. Dr. Griffith reviewed the as-built drawings of that segment of the highway | ¡^following maintenance work done in the early 1980’s which specified a 5-8% slope or a 2.8-4.6 degree angle of slope and compared those specifications to the measurements he made at the scene of the accident which revealed a 10.5 degree slope next to the roadway and, beyond 4 feet, a slope transitioning to 22 degrees. Accordingly, because the highway was not maintained to preserve the shallower slopes specified by the DOTD in resurfacing the highway, Dr. Griffith opined that the slopes were unacceptably unsafe. In addition, Dr. Griffith noted that the frictional characteristics of the loose soil on the bank of the bayou also contributed to the vehicle sliding into the bayou.
Mr. Canfield testified that one of the functions of roadway shoulders is to provide a recovery area for drivers who inadvertently leave the roadway and that the maximum reasonable foreslope is a 1:3 drop, i.e., one foot drop in three lateral feet. Mr. Canfield testified that the roadway shoulder, which rounded from the edge of the roadway down to the bayou, was no greater than 2.5 feet within 500 feet of the accident and, as such provided very little shoulder to accommodate a vehi- *1039 ele leaving the roadway. Mr. Canfield opined that the foreslope, which at the accident site was 1:1, was too steep and contributed to the accident in this case.
The DOTD presented expert testimony by David Wayne Hall, an engineer and expert in highway design, who testified that given Rizzuto’s speed and reaction time, the accident would have occurred even if the roadway shoulders had complied with the specifications relied upon by plaintiffs’ experts to conclude that the roadway was unreasonably dangerous.
Based on the evidence presented at trial, the jury determined that the highway and shoulders of Highway 46 at the site of the accident was in unreasonably dangerous condition and that this unreasonably dangerous condition 1 ^caused or contributed to the accident.[14] Likewise, the trial judge found that Highway 46 “was unreasonably dangerous on May 11, 1998, and caused the accident made basis of instant case.” Accordingly, the jury rendered a verdict in favor of Rizzuto and the trial judge rendered a verdict in favor of Sartalamacchia. Plaintiff Rizzuto was awarded $269,000.00 for damages in addition to his stipulated medical expenses and plaintiff Sartala-macchia was awarded $15,651.52, which included $2,151.52 for past medical expenses.
On appeal, the defendant challenges only the determination of liability and does not contest the damages amounts.

Standard of Review and Applicable Law

A court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of manifest error of unless it is clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989). To reverse a factfin-der’s determination, the appellate court must find from that record that a reasonable factual basis does not exist for the finding of the trial court and the appellate court must further determine that the record establishes that the finding is clearly wrong or manifestly erroneous. Cormier v. Comeaux, 98-2878, p. 6 (La.7/7/99), 748 So.2d 1123, 1126-1127(citation omitted). Where two permissible views of the evidence exist, the fact finder’s choice between them cannot be manifestly erroneous or clearly wrong. Stobart v. State, Dept. of Transportation and Development, 617 So.2d 880, 883 (La.1993). The issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the fact finder’s conclusion was a reasonable one. Id. at 882.
|7The reviewing court may not disturb reasonable evaluations of credibility and reasonable inferences of fact when viewed in light of the record in its entirety even though it feels its evaluations are more reasonable. Petre v. State ex rel. DOTD, 2001-0876, p. 8 (La.4/3/02) 817 So.2d 1107, 1111 (citation omitted). The credibility determinations of the trial court are accorded great deference and, unless documents or objective evidence so contradict the witness’s story or the story itself is so internally inconsistent or implausible on its face that a reasonable fact finder would not credit the witnesses story, the appellate court may not find a trial court’s finding which is based upon a credibility determination to be manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d at 844-845.
In order for the DOTD to be held liable, the plaintiffs must prove that (1) the DOTD had custody of the thing which caused plaintiffs damages, (2) the thing *1040 was defective because it had a condition which created an unreasonable risk of harm, (3) the DOTD had actual or constructive notice of the defect and failed to take corrective measures within a reasonable time, and (4) the defect was a cause-in-fact of plaintiffs’ injuries. Cormier, 748 So.2d at 1127.

Appellant’s Assignment of Error No. 1

First, the DOTD argues that there is no basis for DOTD liability because under the cause-in-fact analysis applicable in this case, which is basically a “but-for” inquiry, Boteler v. Rivera, 96-1507, p. 5 (La.App. 4 Cir. 9/17/97), 700 So.2d 913, 916 (citation omitted), there is no basis for finding the roadway was the proximate cause of the accident because based on the expert testimony they presented at trial, even if the roadway shoulder had been wider and the slope less steep, the truck driven by Rizzuto would still have struck the bayou.
|sThe jury was presented with differing expert opinions as to whether the width and the slope of the roadway shoulder was the cause of the accident. Although Mr. Hall opined that the accident would have occurred regardless of the width and slope of the roadway, it can be reasonably inferred from Dr. Griffith’s testimony that Mr. Rizzuto could have recovered when he drove off the highway to avoid an oncoming car but for the defective roadway shoulder. Accordingly, there is sufficient evidence in the record to support a finding that the roadway was a cause-in-fact of the accident, see Cormier v. Comeaux, 748 So.2d at 1126-1127, and, therefore, giving due deference to the factfinder’s credibility determinations, we cannot find that the factfinders were manifestly erroneous in determining that the condition of the roadway was a cause-in-fact of the accident. This assignment of error is without merit.

Appellant’s Assignment of Error No. 2

Next, the DOTD argues that the triers of fact erred in their conclusion regarding the scene of the accident. At trial, the DOTD disputed the location of the accident site, presenting expert testimony that the plaintiffs’ exhibits and testimony indicating that the accident occurred on a curve in the road marked with solid yellow lines did not correspond to police report specification that the accident site was located .9 miles west of La. 625 and that the roadway was straight with dashed yellow lines. The appellant’s expert testified, however, that although the road is straight at .9 miles west of La. 625, there is a definite curve to the left in the road at 1.2 miles west of La. 625. In addition, appellant’s expert noted that, although it was undisputed that at the time of trial the speed limit on Highway 46 was 55 miles per hour, the police report indicated that the speed limit was 30 miles per hour.
[9The jury made no specific finding with regard to the discrepancies between the police report and the plaintiffs’ testimony and exhibits regarding the accident site, indicating in the jury interrogatories only that the roadway was unreasonably dangerous at the site of the accident. In his reasons for judgment, the trial judge stated in pertinent part:
At trial, the court heard live testimony of Sgt. David Estaves of the St. Bernard Parish Sheriffs Office who had responded to the accident and was the investigating officer at the scene of the accident. Sgt. Estaves testified where the accident had taken place in addition to all other relevant factors contained in a written police report by him. Sgt. Es-taves’ testimony was credible in that he positively identified the accident scene when shown photographs of same by counsel for plaintiff. The court, however, rejects the testimony of Sgt. Estaves *1041 as to the distance from Hwy. 625 as indicated in the police report locating the accident scene. The court further rejects the defense’s position that the accident scene was not the same site as depicted in the Plaintiffs Exhibit No. 1, the same photos shown to Sgt. Estaves, the site of the accident.
Thus, the trial judge concluded that the police report, based on an odometer reading, was incorrect as to the specific mileage point of the accident site and that Sgt. Estaves’ identification of the plaintiffs’ photographic exhibits as the accident site was credible.
Thus, even though the specific mileage point of the accident site on Highway 46 is problematic, there is sufficient evidence in the record to support the trial judge’s specific finding that the accident site as depicted in the plaintiffs’ photographic exhibit and identified by the plaintiffs and Sgt. Estaves was correct. The jury made no specific determination as to whether the police report correctly pinpointed the mileage point of the accident but, inherent in the jury finding that the roadway was unreasonably dangerous and the cause of the accident is a determination that the accident occurred at the location described by the plaintiffs, depicted in plaintiffs’ exhibits, and identified by Sgt. Estaves. Accordingly, giving |indue deference to the factfinders’ credibility determinations, we do not find that the trial judge or the jury were manifestly erroneous with regard to this issue. This assignment of error is without merit.

Appellant’s Assignment of Error No. 3

Third, the DOTD argues that the testimony and evidence adduced at trial do not support the conclusion that roadway and shoulder were unreasonably dangerous. Whether the condition of a road is unreasonably dangerous is a question of fact and should only be reversed if it is manifestly erroneous or clearly wrong. Petre 817 So.2d at 1111; Ledoux v. Dep’t of Transp. And Dev., 98-0024, p. 3 (La.9/18/98), 719 So.2d 43, 44-45.
The jury found that “the highway and shoulders of E. LA Hwy, 46, the site of the accident on May 11, 1998, is in an unreasonably dangerous condition.” The trial judge also concluded that the roadway was unreasonably dangerous on the day of the accident and caused the accident, stating in his reasons for judgment that his conclusion was based on the testimony of Mr. Canfield, whose testimony “centered around the width of the shoulder and the slope of the shoulder at the accident scene” and “indicated that the width of the shoulder was so narrow and the slope of the shoulder was so great as to create an unreasonably dangerous condition on E. La. Hwy. 46 at the accident site depicted in Plaintiffs Exhibit No. 1” and on the testimony of Dr. Franklin Griffith, whose testimony centered around “the inability of the Rizzuto vehicle to recover back onto the roadway and avoid going into the bayou” and whose “opinions were well grounded in the laws of physics.”
The DOTD specifically argues that the trial court erred in finding the roadway unreasonably dangerous because (1) the roadway shoulders, even if defective, were not the cause of the accident; (2) the roadway shoulder at the l^mileage point reported in the police report (.9 miles from Highway 625) fully complied with the design standards cited by Mr. Canfield; and (3) modern highway standards are not applicable to the roadway and therefore the trial court finding that the highway is dangerous is necessarily erroneous because it is based on expert testimony regarding the defective roadway design which is based on modern design standards.
These arguments are without merit. First, as previously discussed, the trial court’s finding that the roadway conditions *1042 were a cause-in-faet of the accident is not manifestly erroneous. Second, as the trial judge concluded that the police report was incorrect in designating the accident site as .9 mile from the intersection of Highway 625 and the jury concluded that roadway conditions at the accident site were unreasonably dangerous, the conditions of the roadway at .9 miles from the intersection with Highway 625 are irrelevant.
 Finally, the DOTD’s third contention, that modern design standards may not be a factor underlying the determination that a roadway is unreasonably dangerous has already been rejected by the Louisiana Supreme Court in Petre, supra, and Aucoin v. State Through the Dept. of Transp. And Dev., 97-1938, p. 8 (La.4/24/98), 712 So.2d 62, 66-67. The DOTD’s failure to reconstruct a state highway to conform to modern standards does not establish the existence of a hazardous defect, but neither is the DOTD shielded from liability merely because it has no duty to update roads to present standards. Petre, 817 So.2d at 1113. ‘‘[WJhile the failure to adhere to [American Association of State Highway and Transportation Officials (AASHTO) ] standards may not alone attach liability, DOTD’s conformance to these standards or not is a relevant factor in determining whether the roadway is unreasonably dangerous.” Id. (citing Au-coin, 712 So.2d at 66). | ^Accordingly, the trial court’s finding that the roadway was unreasonably dangerous is not undermined even if based in part on expert testimony which included a comparison of the roadway design with modern design standards.

Appellant’s Assignment of Error No. 4; Appellee’s Cross-Assignment of Error

Finally, the DOTD argues that the triers of fact erred in their assignment of liability. Specifically, appellant contends that the jury was clearly wrong in assigning only a small proportion of the fault to Mr. Rizzuto and the trial court was clearly wrong in not assigning any liability to Mr. Rizzuto because the evidence indicates that a substantially greater percentage of fault should have been attributed to him. In response, the plaintiffs argue that the jury’s apportionment of 40% fault to the DOTD was excessively low and the trial court’s attribution of all fault to the DOTD was reasonable.
In reviewing comparative fault determination, the trier of fact is owed some deference in allocating fault because the finding of percentages of fault is also a factual determination. Clement v. Frey, 95-1119, p. 6-7 (La.1/16/96), 666 So.2d 607, 609-610 (citations omitted). Accordingly, the trier of fact’s allocation of fault should only be disturbed on appeal when it is clearly wrong or manifestly erroneous. Only after making a determination that the trier of fact’s apportionment of fault is clearly wrong can an appellate court disturb the award, and then only to the extent of lowering it or raising it to the highest or lowest point respectively which is reasonably within the trial court’s discretion. Id. The allocation of fault is neither an exact science nor a search for one precise ratio, but rather it is an 113acceptable range[15] and any allocation by the jury within that range cannot be clearly wrong. Id.
The following factors may be considered in determining whether the trial court was manifestly erroneous in its allocation of fault: (1) the awareness of the *1043 danger; (2) how great a risk was created by the conduct in question; (3) the significance of what was being sought by the conduct in question; (4) the relative capacities of the actors; and (5) any extenuating circumstances. Watson v. State Farm Fire and Cas. Ins. Co., 469 So.2d 967, 974 (La.1985).
With regard to the jury allocation of fault, the DOTD contends specifically that a substantially greater percentage of fault should have been attributed to plaintiff Rizzuto because (1) the accident report prepared by Sgt. Estaves established that the accident occurred in a straight section of the roadway; (2) the accident report established that the posted speed limit was 30 miles per hour and based on Rizzuto’s testimony that he was driving 45-55 miles per hour, the plaintiff was traveling in excess of the posted speed limit which impacted the time in which he had to respond to the oncoming motorist; (3) the plaintiff was not faced with an unavoidable accident because based on the plaintiffs admission that he saw the oncoming headlights 10 to 15 seconds before he ran into the bayou, the plaintiff could have avoided the accident by simply stopping his vehicle. The jury allocated 40 % of fault to the DOTD, 57% of the fault to the phantom driver, and only 3% of the fault to Rizzuto. We cannot say, however, that based on a review of the record as a whole, a reasonable fact finder could not conclude that the greater fault lay with the phantom driver who forced Mr. Rizzuto to take |uevasive action than with Mr. Rizzuto or that a portion of the fault lay with the DOTD for the unreasonably dangerous condition of the highway. Although the police report indicated that the posted speed was 30 miles per hour, it was undisputed that the posted speed at the time of the trial was 55 miles per hour and no evidence was presented which indicated that any change had taken place in the posted speed limit since the accident. Finally, although the appellants expert opined that Mr. Rizzuto could have stopped to avoid the oncoming vehicle rather than driving off on the shoulder of the roadway, a reasonable fact finder could infer that maneuvering onto the shoulder of the road to avoid an oncoming vehicle was a reasonable reaction and that a contributing cause of the accident was the narrow shoulder and extreme slope into the bayou. In the instant case, Mr. Rizzuto’s version of the accident is not so internally inconsistent or unbelievable that we can say that the jury was manifestly erroneous or clearly wrong in choosing to credit Mr. Rizzuto’s version in whole or in part. This is a credibility call the jury is entitled to make with the advantage of being able to observe the demeanor of the live witnesses. The testimony of the witnesses is not so contradicted by objective or documentary evidence and is not so internally inconsistent that a reasonable fact finder is compelled to disbelieve a particular witness or the reasonable inferences to be drawn from the evidence. The record as a whole permits the jury to reach any number of reasonable conclusions concerning fault and we cannot say that the allocation of fault as determined by the jury is beyond the jury’s broad discretion. Accordingly, we find no merit in the DOTDs assignment of error or in the plaintiffs cross-assignment of error with regard to the jury’s allocation of fault with regard to plaintiff Rizzuto’s claim.
hsWe do, however, find the trial judges allocation of 100 of the fault to the DOTD to be manifestly erroneous. Although the appropriate apportionment of fault between the phantom driver and Mr. Rizzuto is problematic, a finding that they are totally without fault is unreasonable. Under the circumstances of this case, Mr. Rizzuto and the phantom driver must be at least partially responsible for the accident and, accordingly, to assign fault solely to *1044 the DOTD is clearly wrong.[16] Based on our review of the record as a whole, we find the allocation of fault for the accident as determined by the jury to be within an acceptable range and therefore lower the trial judges allocation of fault to reflect that of the jury. Accordingly, we amend the judgment of the trial court in favor of Sartalamacchia to allocate 40 of fault to the DOTD, 8 of fault to Rizzuto and 57 to the phantom driver.

Conclusion

For the foregoing reasons, the judgment of the trial court in favor of plaintiff Joseph Rizzuto is affirmed and the judgment of the trial court in favor of plaintiff Neal Sartalamacchia is amended and, as amended, affirmed.

AMENDED AND AFFIRMED.

. Specifically, plaintiffs alleged that the negative slope of the shoulder and the bank of Bayou LaLoutre cause Rizzuto’s truck to be drawn into the bayou after he steered his truck to the shoulder of the highway to avoid an oncoming vehicle which crossed over into his travel lane on a curve.

. In the judgment based on the jury verdict, 57% of fault was cast to "others”.

. The truck, a Ford F-450 tow truck, weighed approximately 3000 pounds and had dual rear wheels.

. There is some confusion as to the exact location of the accident site. The position as indicated by the police report is .9 miles west of La. 625, but photographs taken by the plaintiff indicate that the accident occurred 1.2 miles west of La. 625. Notably, the road is straight at .9 miles west of La. 625, but curves to the left at 1.2 miles west of La. 625.

. Rizzuto stated that he did not know the posted legal speed on the highway. The police report of the incident indicated that the speed limit was 30 miles per hour and that Rizzuto's estimated speed was 30 miles per hour.

. The plaintiffs were not questioned as to whether they were wearing seatbelts but it could be surmised from the driver going up over the steering wheel and the passenger hitting the windshield that they were not wearing seatbelts.

. These design standards were applicable only to totally new roadways built from the ground up.

. The State has no duty to bring old highways up to current safety standards, unless the highway has undergone major reconstruction, but does have a duty to correct conditions existing on old highways that are unreasonably dangerous. Cormier v. Comeaux, 98-2378 (La.7/7/99), 748 So.2d 1123, 1131.

. Specifically, 4000 cubic yards of clamshells were placed on top of the old roadway and graded to a average depth of 2% inches and width of 14 feet. Currently, the hard surface of the roadway is 22 feet.

. Liquid asphalt with gravel rolled into it, which creates a hard surface road.

. The project plans indicate that the travel lanes at this point in time were nine feet wide.

. The crown width is the outside of the shoulder to outside of the shoulder where the slope starts to break and go into the ditch. The ditch alongside the roadway is outside the crown of the roadway.

.Pursuant to current standards and adopted standards formulated by the American Association of State Highway and Transportation Officials (AASHTO) and adopted by the State in the nineteen-sixties, roadway shoulders should be a minimum 5 feet and the slope should be between 2.8 and 4.6 degrees.

. The jury responded in the affirmative to the following two interrogatories: (1) Do you find that the highway and shoulders of E. LA Hwy. 46, the site of the accident on May 11, 1998, is[sic] in unreasonably dangerous condition; and (2)[d]id the unreasonably dangerous condition of E. LA Hwy. 46 cause or contribute to the accident?

. In Clement, the Supreme Court held that any allocation of fault falling between a ratio of 50/50 and 75/25 would be reasonable.

. We note that from the evidence that Mr. Sartalamacchia hit the windshield upon impact it can be surmised that he was not wearing a seatbelt.