985 So.2d 299 (2008)
Yolanda GURLEY
v.
ENCOMPASS INSURANCE COMPANY OF AMERICA, Theodore Mace, Jea Mace, Elizabeth Mace and State Farm Mutual Automobile Insurance Company.
No. 2007-CA-1477.
Court of Appeal of Louisiana, Fourth Circuit.
May 14, 2008.
*300 Christopher M. Rodriguez, Christopher M. Rodriguez, APLG, Michael I. Rodriguez, *301 Law Firm of Michael Rodriguez, Sr., New Orleans, LA, for Plaintiff/Appellant.
James L. Donovan, Jr., Metairie, LA, for Encompass Insurance Company of America.
Sandra K. Cosby, Frederick A. Miller & Associates, Metairie, LA, for State Farm Mutual Automobile Insurance Company.
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge PATRICIA RIVET MURRAY, Judge JAMES F. McKAY, III).
PATRICIA RIVET MURRAY, Judge.
The plaintiff, Yolanda Gurley, appeals the trial court's judgment awarding her $45,500.00 in general damages plus $70,024.75 in past medical expenses against defendant Theodore Mace and his insurer. For the reasons that follow, we affirm.
FACTS AND PROCEEDINGS BELOW
On March 29, 2003, Yolanda Gurley's vehicle, which was traveling westbound on Desaix Boulevard, was struck by another vehicle that was in the process of turning left onto Desaix from northbound Moss Street. Although that vehicle fled the scene, Ms. Gurley noted its license plate number. On March 17, 2004, Ms. Gurley filed suit against Theodore Mace; his insurer, Continental Insurance Company;[1] and her own uninsured/underinsured motorist carrier, State Farm, seeking compensation for injuries she allegedly suffered as a result of the automobile collision. The matter was tried to a jury May 15-17, 2007. The jury rendered a verdict finding that Mr. Mace was guilty of negligence that was a proximate cause of Ms. Gurley's injuries. Based on the jury's response to the interrogatories, the trial court rendered judgment in favor of Ms. Gurley and awarded her $70,024.75 for past medical expenses and $45,500.00 for pain and suffering, mental pain, and disability, together with judicial interest from the date of demand and all costs.
Ms. Gurley filed a devolutive appeal asserting that the amount of general damages awarded was insufficient. Mr. Mace and his insurer filed a cross appeal challenging the trial court's finding of liability and, alternatively, arguing that the award of general damages should be affirmed. State Farm, which filed its own brief as an appellee in the cross appeal, argues that the trial court's finding of liability should be affirmed.
STANDARD OF REVIEW
It is well settled that an appellate court may not set aside a jury's finding of fact in the absence of manifest error or unless the finding is "clearly wrong." Therefore, when there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact may not be disturbed upon review, even though the appellate court may believe that its own evaluations and inferences are as reasonable. Rosell v. Esco, 549 So.2d 840, 844 (La. 1989). Moreover, when findings are based upon determinations regarding the credibility of witnesses, this standard demands great deference to the trier of fact's findings; for only the fact finder can be aware of variations in demeanor and tone of voice. Lirette v. State Farm Insurance Company, 563 So.2d 850, 852. The issue to be resolved is not whether the trier of fact was right or wrong, but whether the fact finder's conclusion was a reasonable *302 one. Cormier v. Comeaux, 98-2378, p. 5 (La.7/7/99), 748 So.2d 1123, 1127. When there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Rosell, supra, 549 So.2d at 844.
DISCUSSION
Liability
Defendants first argue that the trial court erred by refusing to allow them to cross-examine Ms. Gurley using a statement she had made in her deposition prior to trial. In the deposition, Ms. Gurley stated that the driver of the vehicle that collided with hers was an elderly black male, although she had given two prior statements to the insurance company defendants indicating the driver was an elderly white male. The trial court ruled the deposition excerpt was inadmissible, and the defendants contend that ruling constitutes reversible error.
La. C.E. art. 403 provides that relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, or waste of time." The trial court has great discretion in assessing the probative value of evidence. Stockstill v. C.F. Industries, Inc., 94-2072 (La.App. 1 Cir. 12/15/95), 665 So.2d 802, 813. Upon review, the trial court's rulings on issues such as the relevance of evidence and whether the probative value of relevant evidence is substantially outweighed by its prejudicial effect should not be disturbed absent a clear abuse of discretion. Jones v. Peyton Place, Inc., 95-0574, pp. 11-12 (La.App. 4 Cir. 5/22/96), 675 So.2d 754, 763.
In the instant case, we find no abuse of the trial court's discretion. The evidence is clearly prejudicial. In light of Ms. Gurley's initial statements to the insurers describing the other driver as a white male, her trial testimony to that effect, and the corroborating testimony from Ms. Gurley's adult daughter, Terrion Wilson, who was a passenger in Ms. Gurley's vehicle, we cannot say the trial court abused its discretion by determining that the prejudicial effect of the evidence outweighed its probative value.
Defendants next argue that the trial court's finding of liability on the part of Mr. Mace constituted manifest error. We disagree. Mr. Mace, who died prior to trial, testified in his deposition that he was not in the vicinity of the accident nor was he involved in any accident that day. He stated that, on the morning of May 29, 2003, he had driven the Mitsubishi from his home to a house owned by his son at 7318 Panola Street, which he testified was eight blocks away. Mr. Mace said he went to the house on Panola, which his son owned as rental property, to do lawn work because his son was in Germany, and Mr. Mace was preparing to leave for Germany to visit his son in two days. Mr. Mace said he probably left home sometime between 9:00 and 10:00 a.m., and he spent about three hours doing the yard work. He stated that his son's tenants were not home at the time.
Mr. Mace's wife testified at trial that when she received the letter from the hit and run division of the police department notifying her that the Mitsubishi registered in her name had been in an accident, her husband was in Germany, but she told him about the letter over the telephone, and he denied knowing anything about the alleged accident. Ms. Mace, however, was unable to establish the whereabouts of her husband at the time the accident occurred (approximately 11:30 a.m.), other than to state that he had taken the Mitsubishi that Saturday morning intending *303 to drive to her son's rental property to cut the grass, and she did not know what time he had arrived back at home because she was out doing errands.
Countering Mr. Mace's testimony, the plaintiff presented ample evidence to support the conclusion that Mr. Mace was driving the vehicle that struck Ms. Gurley's car. Besides the testimony of Ms. Gurley and her daughter, two experts in accident reconstruction opined that the blue Mitsubishi bearing the license plate number Ms. Gurley had jotted down was the vehicle that had struck her car. In addition, the jury viewed photographs of both the Mitsubishi and Ms. Gurley's vehicle taken after the accident. Finally, the jury could reasonably have concluded that Mr. Mace had lied about his involvement in the accident because he was afraid to admit the truth to his wife, who testified that her husband had totalled one of her cars prior to the alleged accident between him and Ms. Gurley. Although the defendants also presented experts, who opined that the Mitsubishi had not caused the damage to Ms. Gurley's vehicle, the jury obviously chose to believe the plaintiffs experts.
Under the circumstances, we cannot say that the jury's finding of liability was unreasonable in light of the totality of the evidence. Therefore, we decline to disturb that determination.
Quantum
In her appeal, Ms. Gurley argues that the amount of general damages awarded by the trial court was inadequate to compensate her for her pain and suffering. In Reck v. Stevens, the Supreme Court held that, in reviewing a trial court award to determine whether it is either inadequate of excessive, the appellate court must look first, not to prior awards, but to the individual circumstances of the present case. 373 So.2d 498, 501 (La. 1979). Thus, the initial inquiry is whether the trial court's award for the particular injuries and their effects upon this particular plaintiff is a clear abuse of the trial court's discretion. Id. Because the discretion vested in the trier of fact is vast, an appellate court should rarely disturb a general damage award. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess under the particular circumstances that the reviewing court should increase or reduce the award. Youn v. Maritime Overseas Corporation, 623 So.2d 1257, 1261 (La.1993).
In the instant case, Ms. Gurley testified that she felt a funny sensation, like a "trickle," going down her back at the accident scene, but did not start felling pain until that night. Two days after the March 29, 2003 accident, Ms. Gurley went to see Dr. Charles Simmons. According to Dr. Simmons' records, which were introduced into evidence, Dr. Simmons diagnosed Ms. Gurley with cervical, trapezius and lumbar strains, and ordered her to undergo physical therapy three times per week. Ms. Gurley continued to be treated by Dr. Simmons for approximately six months. His medical records reflect that from May through August, Ms. Gurley attended physical therapy sessions about once per week, on average. On September 17, 2003, Dr. Simmons, noting that Ms. Gurley had no complaints of pain and had a full range of motion, discharged her.
Ms. Gurley testified that her pain returned within a week or two of her discharge. However, she did not return to Dr. Simmons until March 12, 2004. At this point Dr. Simmons noted that she did not exhibit any objective signs of injury, but had subjective complaints of pain. He ordered an x-rays and an MRI. Because the x-rays showed some degenerative changes in the neck vertebrae and the *304 MRI showed some disc bulges in the cervical and lumbar regions, Dr. Simmons referred Ms. Gurley to a neurologist, Dr. Kenneth Vogel.
Ms. Gurley first saw Dr. Vogel on June 29, 2004, at which time she gave a history of having intractable pain in her neck and lower back since the 2003 accident. She stated that she had injured her back in a prior accident in 1988 but had fully recovered from that injury prior to the 2003 accident. According to his testimony at trial, Dr. Vogel examined her and made a differential diagnosis that she probably had either a herniated disc or segmental instability in her cervical and/or lumbar regions. Dr. Vogel testified he recommended on Ms. Gurley's second visit, which was July 24, 2004, that she undergo further testing in the hospital so that he could make a definitive diagnosis. However, Ms. Gurley became pregnant about that time and did not return to Dr. Vogel until her baby was four months old, in July, 2005.
At that time she complained of back and leg pain. Dr. Vogel again recommended hospitalization for further testing; however, Ms. Gurley was forced to evacuate to Natchez, Mississippi because of Hurricane Katrina. She did not seek any treatment during the six months she remained in Natchez. She returned to Dr. Vogel in January, 2006 and underwent a cervical myelogram and a lumbar discogram, along with other tests. As a result of those tests, Ms. Gurley had two surgical procedures, a neurotomy to cauterize a nerve in her neck and an IDET annuloplasty to repair a tear in a lumbar disc. These were performed at the same time under the same anesthetic in the hospital on an outpatient basis, with Ms. Gurley being discharged the same day. According to Dr. Vogel, Ms. Gurley still had spasms after the surgery, but they were much improved Her last visit with him was in January, 2007. Dr. Vogel testified that Ms. Gurley's objective symptoms had improved following the surgical procedures, although during her last two visits she had complained of pain flare-ups. He also testified that he believed Ms. Gurley had sustained a ten percent total body impairment, and he had advised her to avoid routinely pushing or pulling more than thirty-five pounds and occupations requiring repeated bending at the waist or flexing of the neck. Based upon her history, Dr. Vogel related Ms. Gurley's injuries to the 2003 accident; he admitted, however, that her type injuries could possibly occur in the absence of any trauma, merely from daily activities.
Ms. Gurley argues that the $45, 500 award was grossly inadequate to compensate for a four years of intractable pain, two surgeries and an overall ten percent disability. She contends that the lowest possible award that would have been reasonable under the circumstances is $150,000. We find, however, that although Ms. Gurley testified she had constant, intractable pain for four years, there was evidence from which the jury could have reasonably found her testimony to be less than fully credible concerning the extent of her pain. For instance, she had no explanation for the fact that she initially had physical therapy only one-third as often as recommended by Dr. Simmons. She was discharged by Dr. Simmons six months after the accident, and then testified that the pain returned about two weeks later. Therefore, the jury could have reasonably inferred that the renewed pain was not solely related to the accident. Moreover, there were several significant gaps in Ms. Gurley's treatment. For instance, she did not return to Dr. Simmons until six months after her pain returned. She then went one year without treatment due to her pregnancy. She testified that she never *305 complained of back pain to the physician she saw during her pregnancy because that was not his area of expertise. Also, despite her pain, she began working at a passport agency in February 2004 after not having worked for four years, testifying that she had gone back to work out of a desire to do something for herself. When asked about medical records showing she had only refilled her prescription pain medication one time, she testified that she did not take the medication regularly, only when, she really needed it.
Under the circumstances, we cannot say the amount of general damages determined by the jury was so low as to be an abuse of the trier of fact's vast discretion. Accordingly, we decline to disturb the award.
CONCLUSION
For the reasons stated, we affirm the judgment of the trial court.
AFFIRMED.
NOTES
[1] The plaintiff's initial petition erroneously named Encompass Insurance Company of America as the insurer of Mr. Mace's vehicle, but she later amended the petition to correct the error and add Continental Insurance Company as a defendant.