# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

# 11-127

JENNIFER THIBODEAUX

VERSUS

BILL COMEAUX, ET AL.

**********

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 01-C-3137-D
HONORABLE DONALD W. HEBERT, DISTRICT JUDGE

**********

## ELIZABETH A. PICKETT
## JUDGE

**********

Court composed of Elizabeth A. Pickett, Billy Howard Ezell, and Phyllis M. Keaty, Judges.

### REVERSED IN PART; AFFIRMED IN PART; AMENDED; AND RENDERED.

John M. Jefcoat
Britney L. Hebert
Galloway & Jefcoat, L.L.P.
P. O. Box 61550
Lafayette, LA 70596-1550
(337) 984-8020
Counsel for Plaintiff/Appellant:
Jennifer Thibodeaux

L. Lane Roy
Alyse Richard
Preis & Roy, APLC
P. O. Drawer 94-C
Lafayette, LA 70509
(337) 237-6062
Counsel for Defendant/Appellee:
State of Louisiana, Department of Transportation and Development

**PICKETT, Judge.**

Plaintiff appeals the trial court's judgment denying her claims against the State of Louisiana through the Department of Transportation and Development (DOTD). For the following reasons, we reverse this finding. We also affirm in part and amend in part the trial court's assessment of fault, and we award damages.

## FACTS

Jennifer Thibodeaux was seriously injured in an automobile accident on May 23, 2001, when her 1993 Nissan Sentra exited the southern eastbound lane of Highway 190 in St. Landry Parish and struck a mound of debris (the debris) that included a block of concrete weighing approximately 3500 pounds and a tractor tire. The accident occurred at approximately 5:30 a.m. when Ms. Thibodeaux's vehicle crossed into the northern eastbound lane of the highway and collided with a vehicle driven by Bill Comeaux. As a result of the collision, Ms. Thibodeaux lost control of her vehicle, exited the highway, traveled through a ditch which runs parallel to Highway 90, and struck the debris, specifically the block of concrete. These facts are a compilation of the testimony of the Louisiana State Trooper who investigated the accident and a good Samaritan who stopped after the accident to render aid due to Ms. Thibodeaux having no memory of the accident and Mr. Comeaux having died before the trial.

During the accident, Ms. Thibodeaux was ejected from her vehicle.[1] She suffered two fractures of her lower jaw, two fractured vertebrae at T12 and L1, three fractures to her pelvis, and a lacerated spleen. She was in intensive care for three

---

[1]Ms. Thibodeaux asserted a claim against the manufacturer of her car that her seatbelt was defective because it failed during the accident. That claim was settled, and her use or nonuse of her seatbelt was not an issue at trial.

1

days and was hospitalized for a total of nine days. While hospitalized, she underwent surgery to repair the fractures of her jaw. This repair required that her jaw be wired closed until July 9, 2001, when another surgical procedure was performed to remove the bars which held her jaw closed. Ms. Thibodeaux was on a liquid diet during that time.

Although her back and pelvic fractures were displaced and painful, Ms. Thibodeaux was prescribed physical therapy three weeks after being released from the hospital. When she began therapy, Ms. Thibodeaux was unable to walk and complained of significant pain. After five weeks of therapy, she still had pain but was released from therapy, notwithstanding having just achieved her goals, because she needed to return to work to pay the medical bills she had begun receiving. Ms. Thibodeaux was unable to walk for eight weeks following the accident.

Despite having suffered severe injuries, Ms. Thibodeaux was very fortunate, as her diligent efforts and hard work to rehabilitate herself were very successful. She returned to work in her usual employment as a janitor after being released from physical therapy and only sought medical treatment once thereafter for her back in October 2001. At that time, she complained of severe pain in her mid and low back which was treated with injections and a back brace. She used the back brace until she quit working in 2008. Ms. Thibodeaux's physician assessed a 20% permanent partial anatomical impairment rating due to her T12 and L1 fractures and congenital spondylolisthesis which was aggravated by the accident. Ms. Thibodeaux married in April 2005 and had a child in July 2009. She continues to experience shooting pain in her jaw occasionally, as well as pain in her back and pelvis, which she attributes to changes in the weather.

Ms. Thibodeaux sued Mr. Comeaux, his insurer, DOTD, and others, alleging they caused and/or contributed to her damages. Her claims against DOTD were tried to the trial court on September 2, 2010. Evidence established that prior to the accident, DOTD contracted with Gilchrist Construction Company (Gilchrist) to perform construction work on Highway 190 at or adjacent to the area where Ms. Thibodeaux's accident occurred. Gilchrist's superintendent for the project, Ronald Ardoin, testified that the debris had been in the same location it was the day of Ms. Thibodeaux's accident from the time Gilchrist started working on the project, two to three months before the accident, and remained there until the project was complete. He stated he had seen the debris before the accident but did not know who placed it there.

Mr. Ardoin testified that the accident did not occur in the "clear zone," which he defined as an area that DOTD requires be kept free of objects a vehicle might strike if it left the roadway. He also testified that the accident occurred outside the work zone or limits of construction of the project. He explained that if the debris had been within the project's limits of construction, Gilchrist would have had to remove the debris. He testified, however, the debris was not within the limits of construction; therefore, Gilchrist had not removed it.

Mr. Ardoin related that DOTD project inspectors and a project engineer who addressed problems with him concerning the project were on the project site daily. He stated DOTD did not inform him the debris was Gilchrist's responsibility and did not instruct him to remove it or to correct anything on the project. DOTD did not dispute his testimony.

3

Ms. Thibodeaux presented the testimony of two expert witnesses regarding DOTD's liability. Kelley Seale Adamson was qualified as an expert in civil engineering with an emphasis on structures and in accident reconstruction, and the parties stipulated that Dean Tekell Jr. is an expert in highway design with an emphasis on traffic engineering. The trial court completely discounted Mr. Adamson's testimony and opinions and relied upon Mr. Tekell's testimony and opinions in deciding DOTD's liability.

Mr. Tekell testified the debris was thirty-five feet south of the centerline of Highway 190. He further testified that according to DOTD's construction plans for the project, the accident occurred within the DOTD's right of way along Highway 190 and within the limits of construction of the project but outside the clear zone of the project. Mr. Tekell further testified that pursuant to the American Association of State Highway and Transportation Official (AASHTO) standards, it is permissible to leave stationary items in the right of way but outside the clear zone for short periods of time, a day or two during a particular phase of the project, but it is impermissible to leave stationary items in the right of way indefinitely. He explained that DOTD's plans and specifications for the project called for Gilchrist to remove debris from the right of way during the course of the project. He opined that Gilchrist failed to satisfy the contract by leaving the debris in the right of way too long and that DOTD should have instructed Gilchrist to remove the debris from the right of way.

At the conclusion of the trial, the trial court found that Gilchrist and DOTD knew the debris was within the right of way but did not remove it and determined that it created an unreasonable risk of harm with regard to Gilchrist but not DOTD. The

4

trial court assessed Ms. Thibodeaux with 60% fault and Gilchrist with 40% fault. Ms. Thibodeaux appealed.

## ASSIGNMENTS OF ERROR

Ms. Thibodeaux assigns three errors with the trial court's judgment:

1. The trial court erred in finding the concrete debris pile did not create an unreasonable risk of harm with respect to DOTD.

2. The trial court erred in finding the concrete debris pile did not act as an intervening and superceding cause to the plaintiff's injuries.

3. The trial court erred in allocating 60% fault to her.

## STANDARD OF REVIEW

Factual findings of a trial court are reviewed under the manifest error-clearly wrong standard of review. *Fontenot v. Patterson Ins.*, 09-669 (La. 10/20/09), 23 So.3d 259. Under this standard, "an appellate court may not disturb a [trial court's] finding of fact unless the record establishes that a factual, reasonable basis does not exist and the finding is clearly wrong or manifestly erroneous." *Id.* at 267. If a trial court commits legal error by applying a wrong legal standard, however, the appellate court must perform a de novo review of the record and render a judgment on the merits. *Becker v. Dean*, 03-2493 (La. 9/18/03), 854 So.2d 864.

## DISCUSSION

**DOTD'S LIABILITY**

"DOTD has a duty to maintain the public roadways, including adjacent shoulders and areas in the DOTD's right-of-way, in a condition that is reasonably safe and does not present an unreasonable risk of harm to the motoring public exercising

5

ordinary care and reasonable prudence." *Forbes v. Cockerham*, 08-672, 08-770, p. 31 (La. 1/21/09), 5 So.3d 839, 858.

DOTD's duty is not limited to prudent and attentive drivers and extends "to motorists who are slightly exceeding the speed limit or momentarily inattentive." *Netecke v. State ex rel. DOTD*, 98-1182, 98-1197, p. 8 (La. 10/19/99), 747 So.2d 489, 495. This duty does not make DOTD the guarantor for the safety of all the motoring public or the insurer for all injuries or damages resulting from any risk posed by obstructions on or defects in the roadway or its appurtenances. *Id*. DOTD can be held liable "only [for] a condition that could reasonably be expected to cause injury to a prudent person using ordinary care under the circumstances." *Id.* The fact that an accident occurred does not result in an inference that an unreasonable risk of harm exists. *Id.* Whether DOTD breached its duty to the public depends on all the facts and circumstances determined on a case by case basis. *Forbes*, 5 So.3d 839.

To establish that DOTD is liable for her injuries, a plaintiff must prove:

(1) DOTD had custody of the thing that caused [her] injuries or damages;

2) the thing was defective because it had a condition that created an unreasonable risk of harm;

(3) DOTD had actual or constructive knowledge of the defect and failed to take corrective measures within a reasonable time; and

(4) the defect in the thing was a cause-in-fact of [her] injuries.

*Netecke*, 747 So.2d at 494.

The trial court concluded that Ms. Thibodeaux proved the first, third, and fourth factors above. DOTD argues the trial court's findings with respect to these factors were wrong. Ms. Thibodeaux correctly asserts, however, that because DOTD did not answer her appeal, it is not entitled to have these findings of fact modified.

6

*Walker v. Clarendon Nat'l Ins. Co.*, 01-2338 (La. 12/14/01), 802 So.2d 1285. Accordingly, we only address Ms. Thibodeaux's contention that the trial court erred in finding the debris did not present an unreasonable risk of harm with regard to DOTD and in its assessment of fault.

Determining whether the debris created an unreasonable risk of harm is not a simple task. The supreme court has explained that courts must use the "unreasonable risk of harm criterion as a guide in balancing the likelihood and magnitude of harm against the social utility of the thing . . . while considering a broad range of social and economic factors." *Forbes*, 5 So.3d at 860. These factors include "the cost to the defendant of avoiding the harm, as well as the risk and the social utility of the party's conduct at the time of the accident." *Id.* "[A]ll the circumstances surrounding the particular accident under review must be considered to determine whether DOTD's legal duty encompassed the risk which caused the plaintiff's damages." *Id.*

Relying on *Cormier v. Comeaux*, 98-2378 (La. 7/7/99), 748 So.2d 1123, the trial court determined that the debris did not constitute an unreasonable risk of harm as to DOTD because no defect on Highway 190 or its shoulder caused or contributed to Ms. Thibodeaux's exiting the roadway and colliding with the debris. The trial court made this conclusion without considering and weighing the factors of the unreasonable risk criterion outlined by the supreme court in *Netecke*, 747 So.2d 489, *Forbes*, 5 So.3d 839, and numerous other cases involving DOTD. Rather, it based its conclusion on one factor present in both *Cormier* and in this case. By doing so, the trial court committed legal error. *Becker*, 854 So.2d 864. Therefore, we now perform a de novo review of the record and render a decision on the merits. *Id.*

7

Mr. Ardoin testified Gilchrist did not create the debris, and no evidence indicates otherwise. Accordingly, the trial court had to determine that Gilchrist's obligation to remove the debris arose from its contract with DOTD. DOTD's duty to maintain the highways, shoulders, and rights of way in a reasonably safe condition is non-delegable. *Woods v. State*, 37,185 (La.App. 2 Cir. 8/14/03), 852 So.2d 1109, *writ denied*, 03-2584 (La. 11/26/03), 860 So.2d 1140. *See also Simmons v. Forby Contracting, Inc.*, 97-1588 (La.App. 3 Cir. 4/29/98), 712 So.2d 614, *writ denied*, 98-1427 (La. 7/2/98), 724 So.2d 740; *Roberts v. State, Through Dep't of Transp. and Dev.*, 576 So.2d 85 (La.App. 2 Cir.), *writ denied*, 581 So.2d 685 (1991). Therefore, if the trial court's finding that the debris constituted an unreasonable risk of harm with regard to Gilchrist is correct, its finding that the debris was not an unreasonable risk of harm with regard to DOTD is legally incorrect.

We now review the facts of this case according to the unreasonable risk of harm criterion and begin by observing that the debris had no social utility. Moreover, there is no evidence the debris was visible to drivers like Ms. Thibodeaux who traveled that portion of Highway 190 early in the morning. Therefore, the danger posed by the debris may not have been perceived by drivers who inadvertently left the roadway. The severity of Ms. Thibodeaux's injuries shows that the likelihood of the harm presented by the debris was not minimal.

The social utility of Ms. Thibodeaux's conduct immediately prior to the accident was meaningful, as she was driving on Highway 190 to work in a manner consistent with its intended use and purpose. Her use of the highway at the time of the accident, though, was not meaningful because for an unknown reason, she left her lane of travel, collided with Mr. Comeaux's vehicle, lost control of her vehicle, and

8

exited the highway. There is no evidence she attempted to stop or significantly slow her vehicle at any time after colliding with Mr. Comeaux's vehicle. Under these circumstances, we find no social utility in Ms. Thibodeaux's actions which caused her to leave the highway.

DOTD cannot be held responsible for all injuries on the state's highways that result from careless driving, but the following facts show that holding DOTD responsible in this case will not place an unreasonable burden on the State and DOTD: 1) it should have been foreseeable to DOTD that the debris posed a serious danger to any driver who inadvertently lost control of her vehicle and left the highway; 2) DOTD's failure to remove the debris from its right of way was a violation of AASHTO standards which DOTD adopted and must follow, La.R.S. 48:35(A); 3) DOTD employees were at the site of the debris daily and knew or should have known of its existence and location; 4) DOTD's contract with Gilchrist included debris removal; 5) removal of the debris required only an instruction to Gilchrist; and 6) removal of the debris would not have cost DOTD any additional funds.

Importantly, we observe that imposing liability on DOTD in this case does not create concerns cases like *Cormier*, 748 So.2d 1123, and *Netecke*, 747 So.2d 480, seek to avoid. It does not require DOTD to perform unreasonable inspections or expend exorbitant amounts of money the State does not have to bring an old highway up to current AASHTO standards. Imposing liability here only requires DOTD and its employees to observe what is clearly visible and to have its contractors perform duties they are contracted to perform.

9

For these reasons, we find the trial court committed legal error in finding the debris did not constitute an unreasonable risk of harm as to DOTD and reverse that finding of fact.

**ASSESSMENT OF FAULT**

Ms. Thibodeaux assigns error with the trial court's assessment of fault and argues DOTD should be assigned a higher degree of fault than her, if not 100% fault. The assessment of fault as required by La.Civ.Code art. 2323 is a fact determination which is reviewed under the manifest error-clearly wrong standard of review. *Rando v. Anco Insulations, Inc.*, 08-1163, 08-1169 (La. 5/22/09), 16 So.3d 1065. In *Watson v. State Farm Fire and Casualty Insurance Co.*, 469 So.2d 967, 974 (La.1985), the supreme court identified factors to be considered when apportioning fault, explaining:

> [V]arious factors may influence the degree of fault assigned, including: (1)whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. And, of course, as evidenced by concepts such as last clear chance, the relationship between the fault/negligent conduct and the harm to the plaintiff are considerations in determining the relative fault of the parties.

Drivers are presumed to be negligent when they cross into another lane of travel and strike a vehicle traveling in its lane of travel, *Stone v. Bullard*, 43,996 (La.App. 2 Cir. 1/28/09), 2 So.3d 1241, and when they lose control of their vehicles. *O'Quin v. Continental Cas. Ins. Co.*, 07-355 (La.App. 3 Cir. 10/10/07), 967 So.2d 1194, *writ denied*, 07-2207 (La. 1/25/08), 973 So.2d 755. These two presumptions are applicable to Ms. Thibodeaux. Drivers also have a duty to maintain a proper lookout for hazards that could pose an unreasonable risk of harm to them. *Id.*

10

The State Trooper testified that Ms. Thibodeaux's vehicle traveled 400 feet after colliding with Mr. Comeaux's vehicle, and Mr. Tekell testified that the debris was thirty-five feet from the centerline of the highway. There is no evidence that anything between her impact with Mr. Comeaux's vehicle and her encounter with the ditch prevented Ms. Thibodeaux from regaining control of her vehicle, but she failed to do so. This evidence shows Ms. Thibodeaux's negligence was a substantial factor in causing the accident; therefore, the trial court's assessment of 60% fault to her is not manifestly erroneous.

Having found the trial court erred in not finding DOTD liable, we must determine what percentage of fault should be assessed to it. In *Roberts*, 576 So.2d 85, the court addressed this issue under circumstances similar to those present here and explained that while DOTD's duty to the plaintiff was non-delegable, the contractor's failure to fulfill its contractual obligations rendered the contractor liable to the plaintiff also. In apportioning fault between DOTD and Gilchrist, we observe neither DOTD nor Gilchrist created the debris, both Gilchrist and DOTD had a duty to remove the debris, and both had an equal opportunity to observe the debris and have it removed. For these reasons, we apportion 20% fault to DOTD and 20% fault to Gilchrist.

**DAMAGES**

The trial court committed legal error in finding the debris did not constitute an unreasonable risk of harm to Ms. Thibodeaux with regard to DOTD; therefore, we have conducted a de novo review of the record to determine the amount of damages to be awarded Ms. Thibodeaux. The parties stipulated that Ms. Thibodeaux's medical expenses were $64,677.40. Ms. Thibodeaux testified she could not work for two

11

months due to her injuries. At the time of the accident, she had a full-time job as a janitor and a part-time job as a cashier. She worked forty hours a week at her full-time job where she earned $7.80 per hour and 14.5 hours per week at her part-time job where she earned $5.15 per hour. Accordingly, she lost wages of $2,496 plus $597.40 or $3,093.40 as a result of the accident.

Ms. Thibodeaux suffered serious injuries, but she worked hard and was rewarded with an excellent recovery. She does, however, continue to suffer occasional pain as a result of her injuries and was assessed a 20% permanent partial impairment rating. Under these circumstances, we award $125,000 in general damages, $64,677.40 in medical expenses, and $3,093.40 in lost wages.

### DISPOSITION

The trial court's finding of fact that the debris did not create an unreasonable risk of harm with regard to the State through the Department of Transportation and Development is reversed. The trial court's assessment of fault is amended to assess 20% fault to the State through the Department of Transportation and Development and 20% fault to Gilchrist Construction Company; its assessment of 60% fault to Ms. Thibodeaux is affirmed. Ms. Thibodeaux is awarded general damages in the amount of $125,000, medical expenses in the amount of $64,677.40, and lost wages in the amount of $3,093.40, together with legal interest thereon from the date of judicial demand. Costs of this appeal are assessed 60% to Ms. Thibodeaux and 40% to the State through the Department of Transportation and Development.

**REVERSED IN PART; AFFIRMED IN PART; AMENDED AND RENDERED.**

12