# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 17-31


**A CARING HOME CARE SERVICES, LLC**

**VERSUS**

**RICHARD DELAHOUSSAYE, ET AL.**


**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF ST. MARTIN, NO. 82,374
HONORABLE ANTHONY THIBODEAUX, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## PHYLLIS M. KEATY
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Elizabeth A. Pickett, Phyllis M. Keaty, and D. Kent Savoie, Judges.


**AFFIRMED.**



Lucretia Pecantte
Lucretia Pecantte & Associates, LLC
Post Office Box 9010
New Iberia, Louisiana 70562-9010
(337) 374-1202
Counsel for Plaintiff/Appellant:
    A Caring Home Care Services, LLC

Kay Pitman Clark
Attorney at Law
715 North Lewis Street, Suite A
New Iberia, Louisiana 70563
(337) 376-6900
Counsel for Defendant/Appellee:
    Janis de la Houssaye, individually and as
    executrix of the Succession of Richard de la Houssaye

**KEATY, Judge.**

Plaintiff/Appellant, A Caring Home Care Services, LLC, appeals the trial court's judgment in favor of Defendant/Appellee, Janis de la Houssaye, individually and as executrix of the Succession of Richard de la Houssaye.[1] For the following reasons, the trial court's judgment is affirmed.

## FACTS AND PROCEDURAL BACKGROUND

In this breach of contract matter, Janis signed an Employment Contractual Agreement with Caring Home on October 30, 2013, for home health care services for her husband, Richard, who suffered from early onset Alzheimer's disease.[2] Omar W. D. Pecantte, the Chief Executive Officer (CEO) of Caring Home, signed on its behalf. The contract obligated Caring Home "to provide basic independent living services" for "a minimum of 15 hours per week." Janis was obligated to "guarantee this contractual agreement for 36 months" and was "responsible for the full price of the contract in the event . . . [she] terminate[d] the agency's services for any reason." The contract was to "begin on October 24, 2013[,] and end on October 24, 2016." On September 3, 2014, Janis advised Caring Home that she no longer wanted its services. In October 2014, Janis attempted to resume services; however, Caring Home did not respond to her attorney's request until December 15, 2014, at which time Janis had already secured other care for Richard. Richard passed away on March 23, 2016, and Janis was appointed as executrix of his succession.

---

[1] The captioned-matter, Plaintiff/Appellant's brief, and the record provide multiple ways to spell the Defendants'/Appellees' last name. For clarity, we will spell their last name as "de la Houssaye" as noted in Defendants'/Appellees' answer.

[2] Janis signed the contract in her capacity as Richard's authorized representative.

On February 19, 2015, Caring Home filed a Petition for Monies Due for Breach of Contract against the de la Houssayes. On March 9, 2015, the de la Houssayes filed their answer and reconventional demand. On January 11, 2016, Caring Home filed its answer to the de la Houssayes' reconventional demand. Following trial on September 20, 2016, the trial court ruled in favor of Janis and orally issued its reasons for judgment.[3] The trial court's written judgment was signed on September 23, 2016. Caring Home appealed the trial court's judgment.

On appeal and in its sole assignment of error, Caring Home contends the trial court erred by dismissing all of its claims against the de la Houssayes. Janis has not filed an appellate brief in this matter.

## STANDARD OF REVIEW

In *Menard v. Stroy*, 16-609, p. 3 (La.App. 3 Cir. 12/21/16), 210 So.3d 302, 304-05, this court discussed the applicable standard of review as follows:

> "Factual findings of a trial court are reviewed under the manifest error-clearly wrong standard of review." *Thibodeaux v. Comeaux*, 11-127, p. 5 (La.App. 3 Cir. 6/15/11), 69 So.3d 674, 679 (citing *Fontenot v. Patterson Ins.*, 09-669 (La. 10/20/09), 23 So.3d 259). An appellate court may not disturb a finding of fact unless the record establishes that a factual, reasonable basis does not exist and the finding is clearly wrong or manifestly erroneous. *Id.*

## DISCUSSION

Caring Home contends the trial court erred by dismissing its breach of contract claim. "In order to succeed on a breach of contract claim, the plaintiff must prove the existence of the contract, a breach of the obligations therein, and damages." *Ledet v. Campo*, 12-1193, p. 7 (La.App. 3 Cir. 3/6/13), 128 So.3d 1034, 1039. A party to a contract breaches it by (1) undertaking an obligation to perform; (2) failing to perform that obligation; and (3) the party entitled to performance

_____

[3] Richard died prior to trial.

suffers damages from the failure to perform. *Sanga v. Perdomo*, 14-609 (La.App. 5 Cir. 12/30/14), 167 So.3d 818, *writ denied*, 15-222 (La. 6/19/15), 172 So.3d 650. "A failure to perform results from nonperformance, defective performance, or delay in performance." La.Civ.Code art. 1994. "In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text." La.Civ.Code art. 2056.

In the trial court's reasons for judgment, it found that Omar wrote the contract and "if there's any doubt, it should be construed against him." It noted the contract failed to define what constituted termination of services. The trial court explained that "[n]o one has a right to terminate those services, not stated in [the] contract. They're both obligated to perform them, unless the parties agree amongst them that the obligation no longer exists or unless it's breached." The trial court found a breach occurred "by the actions or inactions of the attendants and employees of [Caring Home], regardless of whether or not that was reported to the employer, [Caring Home]." It explained that Caring Home "relied upon its employees to perform the services. When the employees don't perform the services, it's breached, regardless if the employer knows about it or not."

The trial court's judgment was based upon the evidence and testimony at trial. At trial, Caring Home presented witness testimony and submitted into evidence the contract, log sheets, time sheets, and employee pay checks. A review of the log sheets and time sheets reveal Caring Home's employees often failed to meet the fifteen-hour minimum required by the contract. For example, Callie Parkerson worked thirteen hours during the week ending on November 11, 2013, and fourteen and one-half hours during the week ending on November 30, 2013. Callie and another Caring Home employee, Dwryne Guillory, worked a total of

twelve and one-half hours during the week ending on April 5, 2014. Joanne Washington, another employee, worked fourteen hours during the week ending on December 14, 2013, and fourteen and one-half hours during the week ending on January 4, 2014. Darcianna Narcisse, another Caring Home employee, worked thirteen and one-half hours during the week ending on February 1, 2014, and fourteen hours during the week ending on March 13, 2014. The log sheets and time sheets contain no explanation as to why those employees failed to meet the fifteen-hour minimum.

Neither could Caring Home's CEO, Omar, explain this discrepancy at trial. Omar, who testified on Caring Home's behalf, acknowledged drafting and executing the contract with the de la Houssayes. Omar explained that log sheets and time sheets are documents signed by the client at the end of every week to authenticate that services were performed. Omar testified that concerns or complaints regarding services rendered are to be transmitted to Caring Home by the client, in writing, on the log sheets and/or time sheets. Omar noted the log sheets and time sheets executed by Janis contained no written complaints. Omar testified that Janis never orally voiced any concerns or complaints to him. Neither did Janis voice her concerns to Lillian Jacobs, a Caring Home supervisor who testified at trial on its behalf. Omar further revealed that on September 3, 2014, Janis went to his office, turned in a binder, and, without offering any explanation, said she no longer wanted Caring Home's services.[4] According to Omar's testimony, Caring Home thereafter sent her a demand letter for the outstanding balance pursuant to the contract.

---

[4] Omar testified that anything written by a client would be in the binder. Janis testified that it also contained time sheets.

Omar agreed that Janis' attorney contacted his attorney approximately one month after Janis turned in the binder and requested Caring Home continue services pursuant to the contract. Omar stated the only caveat was that the de la Houssayes did not "want to pay for the time in which it stopped to the time in which they were willing to restart it." Omar noted that agreeing to forego payments would unlawfully alter the terms of the contract. Omar acknowledged his attorney responded to the request on December 15, 2014. Janis, who testified at trial on behalf of the defense, acknowledged Caring Home's response was delayed a "long time," and she had retained other care for Richard by December 15, 2014. Janis revealed Richard was ultimately placed under Hospice's care until he passed away on March 23, 2016.

On cross-examination, Omar agreed the contract was signed on October 30, 2013, although it stated services were to begin on October 24, 2013. According to Omar's testimony, services did not begin until November 11, 2013, when Callie presented to the de la Houssaye's residence. At trial, Janis was unable to explain the delay in the rendering of initial services under the contract. Omar also identified other Caring Home employees who assisted Richard, including: Doreen Guillory, Christy Marshall, Darcianna Narcisse, and Joanne Washington.

Callie, who testified on Caring Home's behalf, stated Janis was satisfied with her treatment of Richard. When asked whether Janis discussed the contract with her, Callie responded: "Maybe one time, she had maybe said something about she didn't realize that the contract . . . was for that long and that, due to finances, that she didn't think she would be able to keep it for that long." On cross-examination, Callie admitted she logged less than fifteen hours per week on days when Janis remained home or returned home from work early. Callie's

5

testimony reveals on those days, Janis told her that she could care for Richard without Callie's assistance. Callie testified that "once or twice" when Janis had sent her home Callie "would call the office and let them know[.]" Callie revealed that, "[i]f it was less time than our schedule required, we had to call the office and let them know that she didn't need me to stay the full schedule, that I'm going home. And they would tell me okay."

Taylor de la Houssaye, Janis and Richard's daughter, was presented as a defense witness at trial. Taylor testified she was attending college in another state when Richard became ill, and, thereafter, she transferred to a local college to help care for him. Taylor explained that when she was at her parents' home, she noticed Caring Home's employees were often on their phones rather than providing attention to Richard. Taylor testified that Caring Home's employees failed to show up "at least once every two weeks," which forced her to miss school or Janis to miss work in order to care for Richard. Taylor acknowledged that she never reported the absences to Caring Home because she was not privy to the contract at issue.

Taylor testified regarding an attendant named Dee, with the last name of either Guillory or Narcisse. While there is no other evidence or testimony in the record identifying a Caring Home employee named Dee, the log sheets and Omar's testimony indicate that Doreen Guillory and Darcianna Narcisse were Caring Home's employees who rendered care to Richard. In that regard, Taylor indicated Dee would bring her children to work with her. Taylor's testimony is confirmed by Janis' testimony that a certain employee, who was also a young mother, brought her children to work. Janis revealed that she was uncomfortable with the situation although she did not complain because the young mother showed up for work.

6

Omar's testimony indicates that employees are prohibited from bringing their children to work with them.

Taylor testified that Dee also used her laptop to take online courses. At trial, Omar noted such activity was prohibited. Taylor revealed she subsequently confronted Dee, who admitted to using it, apologized, and said it would not happen again. Janis' testimony indicates she also confronted an employee who used Taylor's computer. Taylor revealed that after Caring Home's services stopped, she and Janis took turns caring for Richard until they obtained assistance from another home health agency. According to Taylor's testimony, Hospice ultimately cared for Richard until he passed away.

At trial, Janis revealed Caring Home's employees ran late or left early at least once a week. Janis testified the employees "used their phones a lot." Janis revealed one occasion wherein she gave an employee permission to drive Richard to get a snowball. Janis later found out that during their outing, the employee also picked up her children from school. Omar testified that employees are prohibited from running personal errands while working. Janis explained she never contacted Caring Home with concerns or complaints because she did not "want to do anything that would upset the assistant[s]." Janis wanted to know that Richard was receiving the best care when she was not home. Janis said she did not want to sound confrontational and that she needed their help because she was "beyond stressed of having to care for so many people and trying to stay out of debt." On the other hand, Omar said he would not have retaliated against Janis by providing substandard care to Richard if she would have complained.

Janis revealed another occasion wherein Dee failed to show up to care for Richard following his dental surgery. Janis reported Dee's absence to Caring

7

Home, who was unable to advise her as to Dee's whereabouts. Janis noted that a few days later, Caring Home sent another employee, Christy, to their house. After their initial meeting, Janis stated that Christy missed work. At that point, according to Janis' testimony, she put Richard into the car, drove to Caring Home's office, dropped off the binder, and ended its services.

Katherine Speckman, Janis' sister, was the defense's final witness. Katherine testified that she learned from Janis, during telephone conversations, that Caring Home's employees often failed to show up for work. According to Katherine's testimony, this failure caused chaos for Janis because she would have to miss work. Katherine experienced this chaos firsthand while visiting Janis at her home when a Caring Home employee failed to show up. Katherine explained that she watched Richard for one week in 2014 because Janis could not get anybody else. Katherine indicated Caring Home constantly sent new employees, which caused Richard stress. According to her testimony, Katherine attempted to alleviate Richard's stress by remaining with him when new employees began assisting Richard.

The above testimony and evidence indicates Caring Home undertook the obligation to provide home health services to Richard. Pursuant to the terms and conditions of the contract, Richard was guaranteed at least fifteen hours of care per week. The log sheets, time sheets, and witness testimony reveal that Caring Home failed to perform that obligation when numerous employees failed to log fifteen hours of work. The evidence and testimony shows that Caring Home's failure to perform, or its defective performance, caused Janis to sustain damages, which included missing work, spending money on other home health services, and experiencing increased stress. The trial court, therefore, was not manifestly

erroneous in finding that Caring Home breached the contract, and this assignment of error is without merit.

## DECREE

The trial court's judgment in favor of Defendant/Appellee, Janis de la Houssaye, individually and as executrix of the Succession of Richard de la Houssaye, is affirmed. All costs of this appeal are assessed to Plaintiff/Appellant, A Caring Home Care Services, LLC.

**AFFIRMED.**