# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 23-601


**CATHERINE WILLIAMS, INDV. AND RONNIE WILLIAMS, INDV.**

**VERSUS**

**TRAVELERS INDEMNITY COMPANY OF CT, ET AL.**


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 265,897
HONORABLE MONIQUE RAULS, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**GARY J. ORTEGO**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Van H. Kyzar, Charles G. Fitzgerald, and Gary J. Ortego, Judges.


**AFFIRMED.**

**Robert L. Bussey**
**Lewis O. Lauve, Jr.**
**Bussey & Lauve**
**P. O. Box 8778**
**Alexandria, LA 71306**
**(318) 449-1937**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Acadian Ambulance Service, Inc.**
     **Steven D. Smith**
     **Travelers Indemnity Company of Connecticut**

**Jerry L. Lavespere, Jr.**
**Attorney at Law**
**1805 Jackson St.**
**Alexandria, LA 71301**
**(318) 443-9926**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
     **Ronnie Williams**
     **Catherine Williams**

**Kevin L. Camel**
**Cox, Cox, Filo, Camel, Wilson & Brown, LLC**
**723 Broad St.**
**Lake Charles, LA 70601**
**(337) 436-6611**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
     **Ronnie Williams**
     **Catherine Williams**

**ORTEGO, Judge.**

This matter arises out of a motor vehicle accident between the plaintiff/driver traveling in the right lane and the defendant/ambulance driver traveling in the left lane of two merging lanes on Broadway Avenue in Alexandria, Louisiana. After trial, the jury found the defendant/ambulance driver and the employer ambulance service at fault for the accident. The jury awarded the plaintiff, *inter alia*, damages for future medical expenses and the spouse of the plaintiff damages for loss of consortium. Defendants filed a JNOV which was denied. Thereafter, both plaintiffs and defendants appealed the judgment. On appeal, we affirm.

## FACTS AND PROCEDURAL HISTORY

On October 28, 2018, Catherine Williams was driving her vehicle on Broadway Avenue in Alexandria, Louisiana. Broadway Avenue is a four-lane highway as it crosses over I-49. Catherine was traveling north bound in the right lane.

Steven Smith was driving an ambulance, within the course and scope of his employment with Acadian Ambulance Service, Inc., in the left lane of Broadway Avenue also traveling north bound. The ambulance driven by Smith was insured by Travelers Indemnity Company CT.

Broadway Avenue, after it crosses over I-49, changes from a four-lane highway into a two-lane highway. As the two northbound lanes merged into one lane, the front right of the ambulance, driven by Smith, collided with the left rear of Catherine's vehicle.

Catherine Williams and her husband, Ronnie Williams (the Williamses) filed suit for damages from the October 2018 vehicle accident against Steven Smith, Acadian Ambulance, and Travelers Indemnity Company CT (collectively "Travelers").

A three-day jury trial commenced on November 29, 2022. At the conclusion of the trial, a unanimous jury found Steven Smith forty percent (40%) and Acadian Ambulance sixty percent (60%) at fault for the accident, with allocations of zero percent (0%) fault to Catherine Williams and an unnamed third party. The jury awarded Catherine Williams, *inter alia*, $350,000.00 for future medical expenses and Ronnie Williams $60,000.00 for loss of consortium.

Travelers filed a JNOV, which was denied. Travelers and the Williamses both appeal the judgment with Travelers asserting six assignments of error and the Williamses asserting one.

## TRAVELERS' ASSIGNMENTS OF ERROR

1. The decision of the jury to assess fault on Steven Smith for causing the subject incident was manifestly erroneous and clearly wrong given the amount of uncontested and/or unrefuted evidence presented at trial, all of which was clearly ignored by the jury.

2. The jury committed manifest error when it found the accident at issue was caused, in part, by defendant, Acadian Ambulance, when there was no factual basis to support said decision.

3. Alternatively, the jury committed manifest error when it failed to allocate any fault to the plaintiff, Catherine Williams, given her admissions that she knew the ambulance was there and she knew her lane of travel was narrowing, coupled with the unrefuted evidence that Williams was driving faster than the ambulance and was overtaking the ambulance just prior to and during the accident at issue.

4. The jury committed manifest error when it failed to allocate any fault to the unnamed third party, which turned out to be the Department of Transportation and Development ("DOTD") for failing to appropriately sign or mark the portion of Broadway Avenue leading up to and including the [area] of the subject accident.

5. The jury award of damages to plaintiff, Catherine Williams, especially future medicals, is excessive and not supported by the evidence presented.

6. The jury award of damages to plaintiff, Ronnie Williams, is excessive and not supported by the evidence presented.

## THE WILLIAMSES' ASSIGNMENT OF ERROR

1. The jury failed to award the full amount of Catherine Williams' future medical expenses as proven at trial.

## STANDARD OF REVIEW

Travelers' first four assignments of error question the jury's allocation of fault. In *Layssard v. State, Dep't of Public Safety and Corrections*, 07-78, p. 3 (La.App. 3 Cir. 8/8/07), 963 So.2d 1053, 1057-58, *writ denied*, 07-1821 (La.11/9/07), 967 So.2d 511, this court set forth the standard of review for a trier of fact's apportionment of fault:

> The Louisiana Supreme Court, in *Duncan v. Kansas City Southern Railway Co.*, 00-66, pp. 10–11 (La.10/30/00), 773 So.2d 670, 680–81, set forth the standard for reviewing comparative fault determinations as follows:
>
> > This Court has previously addressed the allocation of fault and the standard of review to be applied by appellate courts reviewing such determinations. Finding the same considerations applicable to the fault allocation process as are applied in quantum assessments, we concluded "the trier of fact is owed some deference in allocating fault" since the finding of percentages of fault is also a factual determination. *Clement v. Frey*, 95-1119 (La.1/16/96), 666 So.2d 607, 609, 610. As with other factual determinations, the trier of fact is vested with much discretion in its allocation of fault. *Id*.
> >
> > Therefore, a trier of fact's allocation of fault is subject to the manifestly erroneous or clearly wrong standard of review. A trial judge's findings of fact will not be disturbed unless they are manifestly erroneous or clearly wrong. *Stobart v. State, through Dep't of Transp. & Dev.*, 617 So.2d 880 (La.1993). "Absent 'manifest error' or unless it is 'clearly wrong,' the jury or trial court's findings of fact may not be disturbed on appeal." *Sistler v. Liberty Mut. Ins. Co.*, 558 So.2d 1106, 1111 (La.1990). "If the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Id*. at 1112.

In Travelers' final two assigned errors and the Williamses' sole assigned error, the issue presented is the appropriateness of the jury's damage awards. The jury's findings that the Williamses were entitled to damages is a finding of fact and subject to the manifest error standard of review. Likewise, the jury's damage amount awarded to Catherine Williams for future medical expenses is subject to the manifest error standard of review. "Absent 'manifest error' or unless it is 'clearly wrong,' the jury or trial court's findings of fact may not be disturbed on appeal." *Sistler*, 558 So.2d at 1111. A trier of fact is afforded much discretion in the assessment of damages, and the adequacy of the award is determined by the circumstances of that case. *Bentley v. Fanguy*, 09-822 (La.App. 3 Cir. 10/6/10), 48 So.3d 381, *writ denied*, 10-2854 (La. 2/25/11), 58 So.3d 457.

## LAW AND DISCUSSION

I.    *Travelers' Alleged Errors Numbers One through Four – Allocation of Fault*

Travelers' first four assignments of error allege manifest error by the jury in its fault allocations to Steven Smith and Acadian Ambulance and the lack of fault allocations to Catherine Williams and the DOTD. These assignments are all subject to the same standard of review. As such, we will address them together.

A.    *Steven Smith and Catherine Williams – Allocation of Fault*

In Travelers' first assignment of error, it contends that the jury was manifestly erroneous for assessing fault to Steven Smith (Smith) for causing the accident "given the amount of uncontested and/or unrefuted evidence presented at trial." Alternatively, in their third assignment of error, Travelers asserts that the jury committed manifest error when it failed to allocate any fault to Catherine Williams ("Catherine").

"A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety." La.R.S. 32:79(1). Drivers are presumed to be negligent when they cross into another lane of travel and strike a vehicle traveling in its lane of travel. *Thibodeaux v. Comeaux*, 11-127 (La.App. 3 Cir. 6/15/11), 69 So.3d 674.

In the case before us, Broadway Avenue, after it crosses over I-49, merges from a four-lane highway to a two-lane highway. Evidence in the record supports a finding that, immediately prior to this accident, Smith was traveling in the left northbound lane while Catherine was traveling in the right northbound lane. Prior to the merging of the two lanes, there was signage indicating that the left, northbound lane, occupied by Smith, ended, and the right, northbound lane, occupied by Catherine, continued. Here, as the two northbound lanes merged into one lane, the front right of the ambulance driven by Smith collided with the left rear of Catherine's vehicle. Thus, a finding by the jury that it was incumbent on Smith to merge over to the right lane when he could safely do so is reasonable.

Key evidence in the record supporting the jury's allocation of fault is a video of the accident as it transpired. The ambulance driven by Smith was equipped with a dash camera that recorded both the driver, passenger, and the driver's view of the roadway through the windshield. In viewing the video, and despite Catherine's headlights being visible on Smith's right neither he nor his passenger are ever seen checking the right lane prior to the collision between the two vehicles. Additionally, the video of Smith's view outside his windshield clearly depicts that the left lane, Smith's Lane, was ending, while the right lane, Catherine's lane, continued as indicated by the double yellow lines, thus steering Smith to safely merge into Catherine's lane.

5

The record also contains multiple photographs that corroborate the video evidence. The photographs show signage and markings on the roadway that indicate the left lane, which Smith occupied, ended, and thus it was incumbent upon Smith to merge into the right lane, occupied by Catherine, when that movement could be safely accomplished.

Travelers argues that its evidence proves that Smith was free from fault. Specifically, the testimony of its expert, Jason Jupe, that Smith never veered to his right and that the geometry of Broadway Avenue was such that, at the point of the contact between the two vehicles, Broadway Avenue was one big lane or two lanes. Additionally, Travelers asserts that Jason Jupe's opinion that Catherine was exceeding the speed limit by one to two miles per hour prior to the accident and that Catherine allegedly acknowledged she saw the ambulance next to her as she drove by establishes that Catherine was at fault in causing the accident.

However, two experts, Jay Gallagher, an accident reconstructionist, and Dale Craig, a representative of the DOTD, both testified and opined that Smith was solely at fault for causing this accident. Specifically, Jay Gallagher opined that Smith's failure to safely merge into the right lane, before his lane ended, caused the collision with Catherine's vehicle. Jay Gallagher further testified that Smith's inattentiveness was also a cause of the accident, specifically mentioning Smith's use of the laptop while driving. Dale Craig opined that the signage present on the day of the accident indicated that left lane, which Smith occupied, ended, and therefore he was to safely merge right with into Catherine's favored lane of travel, thus having to give Catherine the right of way.

The video, photographs, and expert testimony provide sufficient evidence to find that Smith's failure to safely merge into Catherine's favored lane when his lane ended, and his failure to yield the right of way to Catherine, along with his

6

inattentiveness, were the causes of the accident. Accordingly, we affirm the jury's allocation of fault to Smith and its decision to allocate no fault to Catherine.

Travelers may be correct that some of the evidence could be interpreted to allocate fault differently between Smith and Catherine. However, this evidence merely conflicts with the other evidence adduced at trial, as cited above, showing fault by Smith and no fault by Catherine. Moreover, the standard of review compels this court to determine whether the jury's findings are reasonable in light of the record reviewed in its entirety. *Sistler*, 558 So.2d 1106. As stated in *Stobart*, 617 So.2d at 883, "where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong."

Given the above, we find that a reasonable view of the record in its entirety shows that Smith was at fault for this accident while Catherine is free from fault. Catherine's lane continued while Smith's ended, thus Catherine had the "favored lane." This placed the burden on Smith to safely merge into Catherine's favored lane prior to the front right of Smith's ambulance contacting the back left of Catherine's vehicle. Further, the video evidence in the record dictates a finding that Smith failed to properly ascertain whether it was safe to merge into Catherine's favored lane prior to this accident. Here, the jury heard conflicting evidence, with both lay and expert opinions, and assessed fault to Smith and none to Catherine. Accordingly, Travelers' assignments of error related to the allocation of fault between Steven Smith and Catherine Williams are without merit.

*B. Acadian Ambulance – Allocation of Fault*

In its second assignment of error Travelers contends that the jury's allocation of fault to Acadian Ambulance was unreasonable. It is well established that employers are directly liable for the damages caused by their employees as a result

7

of the employer's failure to train and supervise the employees. *Roberts v. Benoit*, 605 So.2d 1032 (La.1991).

Here, Smith testified that he completed some driving training the day he was hired five years prior to the accident in October of 2013. When asked if Smith was familiar with Acadian Ambulance's motor vehicle safety policy, Smith indicated that he knew of one, but it has been a while since he had read it. The motor vehicle safety policy which came into effect in October 2018, mandated that all employees in Emergency Medical Services were to complete a Low Force Driving Course. Smith was unsure if the training course he completed when he was hired in 2013 was the same as the one that became effective in 2018. The Acadian Ambulance safety policy, including the requirement for completion of the Low Force Driving Course, was entered into evidence by the Williamses. However, Smith did testify that he was aware that he was to observe all traffic laws applicable to any motorist on the roads including signaling when attempting a lane change, observing traffic around the vehicle before attempting to change lanes, etc.

Further, in the video discussed above, a laptop is visible on the dashboard of the ambulance facing Smith. At the time of the accident, Acadian Ambulance provided those laptops for the ambulance to get calls for their emergencies, such as from 9-1-1, and for GPS directions to the location of the emergency. Smith testified that, as the driver, he would periodically look at the laptop. Additionally, Acadian Ambulance's required use of laptops by individuals while driving their ambulances can reasonably be found to constitute negligence on behalf of the company and a basis to allocate fault to Acadian Ambulance. Further, as discussed previously, Jay Gallagher, testified that Smith's inattentiveness was a cause of the accident and specifically mentioned Smith's use of the laptop while driving at the time of this accident.

Thus, we find that a reasonable jury could find that the testimony of Smith that he was unsure of the last time he read the Acadian Ambulance motor vehicle safety policy, along with Acadian Ambulance's required use of laptops by individuals driving their ambulances, provides a reasonable basis to find a failure of Acadian Ambulance to train and supervise its employees. Here again, the jury heard conflicting evidence and expert opinions and assessed fault to Smith and Acadian Ambulance only. Accordingly, we find no merit to this assignment of error.

### C. Unnamed Third Party – Allocation of Fault

Finally, Travelers' fourth assignment of error addresses the jury's failure to allocate any fault to the Department of Transportation and Development ("DOTD") for failing to appropriately sign or mark the roadway near the accident. The only DOTD-related evidence produced by Travelers in the record is that the sign indicating that the left lane was to merge with the right had often been changed within months of the trial and even during trial. However, Dale Craig, an expert and representative of the DOTD, testified that the sign present on the day of the accident was appropriate, i.e. that the left lane was to merge with the right lane. This testimony alone provides a reasonable basis for the jury to find no fault by the DOTD in causing the accident. Additionally, the video of the accident indicates that Smith was not looking at or towards any signs present that night. Rather, at the time of this accident, Smith was alternatively looking forward and glancing at his laptop.

Finally, it is clear from the record that not only the merge right sign, some five hundred feet prior to the accident, but also the lane markings in front of Smith's lane, indicated that Smith's vehicle was to merge right as his lane of travel was to end. Thus, a finding of no fault by the DOTD is reasonable.

In summary, given the above, we find no manifest error by the jury in its allocations of fault in this case. Each allocation was reasonable as each has sufficient support in the record.

## II. Travelers' Alleged Errors Numbers Five and Six – Excessive Damage Awards

In its fifth assignment of error, Travelers alleges that the jury award of damages to Catherine, especially future medicals, was excessive. In its final assignment of error, Travelers asserts that the damages to Ronnie Williams ("Ronnie") for loss of consortium were excessive and not supported by the evidence presented.

### A. Catherine Williams – Damages

Regarding Catherine Williams, Travelers points to evidence in the record that she had a history of back pain prior to the subject incident. In brief, Travelers outlines how Catherine's pain complaints were similar to those she had in the past. However, as above, we are compelled by the standard of review to determine whether a reasonable basis exists for the jury's findings, not whether a reasonable basis exists for a point of view different than that of the jury. Travelers' main objection to the award was for future medical expenses.

The medical records presented to the jury contain the results of an MRI Catherine underwent on February 4, 2019. The results indicate that she has two bulging discs in her lower back at L3-L4 and L4-L5. Dr. Gassan Chiban, an interventional pain doctor and anesthesiologist, testified that Catherine first treated for pain resulting from the accident with Dr. Leglue, her primary care physician, before she was referred to him. According to Dr. Chiban, another MRI from September 3, 2019, indicated that Catherine had a disc bulge at L2-L3 in addition to those at L3-L4 and L4-L5. He related the pain from these bulges to the accident.

Further, Dr. Chiban opined that Catherine would have to undergo interventional pain management for the rest of her life at an estimated cost of $457,283.00 to $812,183.00.

We find the objective evidence of injury suffered by Catherine in the form of MRIs, coupled with the expert medical testimony directly relating those injuries to the accident, provides ample evidence to support the jury's award of damages to Catherine. Further, the award of $350,000.00 was actually below what Dr. Chiban opined was warranted. Here, the jury heard conflicting evidence and expert opinion and assessed the damages it awarded to Catherine. Accordingly, we find that a reasonable basis exists in the record for the jury to award Catherine $350,000.00 in damages for future medical expenses.

*B. Ronnie Williams – Excessive Damages*

Regarding the damages awarded to Ronnie, Travelers asserts that $60,000.00 for loss of consortium was excessive. According to Travelers, most of Ronnie's testimony pertained to how the accident impacted Catherine and not how it impacted him.

Ronnie testified that he and Catherine were married in 2006. Ronnie further testified that prior to the accident Catherine was "active" and "jolly" often going out shopping with her daughter or sister. However, since the accident, despite Ronnie being hesitant to testify negatively about Catherine, he described her as different with a "bad attitude."

Ronnie's testimony confirmed that prior to the accident he and Catherine travelled often by visiting their adult children who lived away, by going on leisure trips to places like Albuquerque, New Mexico and Gatlinburg, Tennessee, or by simply taking trips in their RV. Ronnie also stated that prior to the accident they used to take trips for family Christmases where the entire family would travel to

11

Dallas or Baton Rouge. Ronnie also testified that prior to the accident the couple did many activities together such as eating out at restaurants, bowling, or going to movies. They also regularly attended church community gatherings, in addition to normal weekend services. Since the accident, Ronnie stated that Catherine does none of these things, and she just "stay[s] around the house mostly" because she can no longer ride in a car for long distances. In summation, Ronnie testified that "we mostly did a lot of things together that, you know, that we don't do too much anymore, you know."

Ronnie described Catherine as a "good homemaker" prior to the accident wherein she did all the cleaning, cooking, and washing of clothes. He stated that prior to the accident he would offer to help her, but she would not allow it because he "can't get out of the way." Since the accident, he now has to help her because "she ain't got no other choice." Finally, Ronnie testified that he and Catherine no longer have a "normal sexual life anymore because of her pain."

While the above testimony does focus mostly on how Catherine had changed since the accident, a reasonable trier of fact can conclude that the negative impact on Catherine also negatively impacted Ronnie, thus resulting in damage to Ronnie. We find a man whose spouse changed from being a "jolly" and "active" companion on many couple endeavors to being a person in pain with a "bad attitude" and who "stays around the house mostly" can reasonably be found to have proven entitlement to loss of consortium damages. Further, Ronnie testified that his life has changed by an increase in performing homemaker tasks and in a loss of a "normal sexual life."

Moreover, the facts of this case, as found by the jury, are not such that Ronnie had to deal with Catherine's changes for a limited amount of time prior to her recovering from her injuries. Rather, the jury awarded Catherine future medical

expenses related to Dr. Chiban's testimony that Catherine would undergo interventional pain management for the rest of her life. This results in the reasonable conclusion that Catherine's changes since the accident would continue to also impact Ronnie for the foreseeable future. Accordingly, we find that a reasonable basis exists in the record for the jury to award Ronnie $60,000.00 in loss of consortium damages.

*III. Williamses' Assignment of Error – Award for Future Medical Expenses*

In their sole assignment of error, the Williamses argue that the jury failed to award the full amount of Catherine's future medical expenses as proven at trial. The Williamses point out that Dr. Chiban's estimated cost for Catherine to undergo interventional pain management for the rest of her life to be between $457,283.00 and $812,183.00, and they argue this testimony was uncontroverted. The jury awarded Catherine Williams $350,000.00 for future medical expenses; accordingly, this was a manifest error.

However, and as Travelers points out in brief, Catherine had similar complaints of pain prior to the accident in a multitude of respects. Thus, the jury was aware of the medical records from before the accident and could reasonably conclude that some, but not all, of Dr. Chiban's estimated costs for future medical expenses were related to the accident based on those medical records. Moreover, Dr. Chiban did acknowledge that Catherine suffered from other back conditions that could produce back pain that were unrelated to the accident.

As such, after a thorough review of the record, we find a reasonable basis exists for the jury to award less than the full future medical expenses suggested by Dr. Chiban. Thus, this assignment of error lacks merit.

## **DECREE**

Travelers raises six assignments of error regarding the allocation of fault and damages awarded by the jury. We find no merit to any of the raised assignments.

Catherine and Ronnie Williams raise a single assignment of error that the jury's award to Catherine for future medical expenses was insufficient. This assignment of error lacks merit.

Accordingly, we affirm the jury's allocation of fault and damage awards in this matter. Costs of these proceedings are assessed to Steven Smith, Acadian Ambulance, and Travelers Indemnity Company CT.

**AFFIRMED.**